















RXC    5/7/02    16:00

3:02-CV-00870    MARSHALL V. PEREGRINE SYS INC

*1*

*CMP.*

1  Jeffrey R. Krinsk, Esq. (109234)
   Mark L. Knutson, Esq. (131770)
2  FINKELSTEIN & KRINSK
   501 West Broadway, Suite 1250
3  San Diego, CA 92101-3593
   Telephone:    619/238-1333
4  Facsimile:     619/238-5425

5  Attorneys for Plaintiff ALAN MARSHALL

6

7

8              UNITED STATES DISTRICT COURT

9              SOUTHERN DISTRICT OF CALIFORNIA

10

11  ALAN MARSHALL, on Behalf of Himself and    )   Case No. 02 CV 0870 J (RBB)
    All Others Similarly Situated,             )
12                                             )   CLASS ACTION
                        Plaintiff,             )
13                                             )   COMPLAINT FOR VIOLATION OF
    v.                                         )   THE FEDERAL SECURITIES LAWS
14                                             )
    PEREGRINE SYSTEMS, INC.; JOHN J.           )
15  MOORES; STEVE GARDNER; MATT                )
    GLASS; AND CHRISTOPHER COLE,               )
16                                             )
                        Defendants.            )   Plaintiff Demands a Trial by Jury
17  _____   )

18          Plaintiff on behalf of himself and all other persons similarly situated, by his undersigned

19  attorneys, alleges upon personal knowledge as to himself and his own acts, and upon information

20  and belief as to all other matters, based upon, *inter alia,* the investigation conducted by and through

21  his attorneys, which included, among other things, a review of the public documents and

22  announcements, Securities and Exchange Commission ("SEC") filings, and press releases regarding

23  Peregrine Systems, Inc. (hereinafter "Peregrine" or the "Company"), as follows:

### NATURE OF THE ACTION

25          1.      This is a class action on behalf of all persons or other entities that purchased or

26  acquired the common stock or other securities of Peregrine within the period of April 1, 2000 through

27  May 6, 2002, inclusive, (the "Class Period"), to recover damages caused by Defendants' violations

28  of the federal securities laws.  During the Class Period, Defendants issued to the investing public

1   false and misleading press releases concerning the Company's publicly-reported revenues, income

2   and financial results.

3        2.      From at least April 1, 2000, Defendants issued press releases announcing positive

4   business progress and financial results.  The Company announced quarterly increases in revenues

5   and stabilized earnings during the Class Period.  The "outstanding" progress for Peregrine was

6   illusory.  On May 6, 2002, Peregrine announced that, in addition to delaying it quarterly earnings

7   report, investor fears were proving accurate and Defendants acknowledged that earlier reported

8   financial results for fiscal 2001 and 2002 had overstated revenues by as much as $100,000,000.  The

9   financial irregularities in fact were the result of Defendants' recognizing income and revenue related

10  to non-existent or improperly recognized product shipments that were intentionally exaggerated to

11  falsely fortify a failing enterprise.

12       3.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a)

13  of the Exchange Act, 15 U.S.C. §§ 78j(b), 78t(a) and the rules and regulations promulgated

14  thereunder by the SEC, including Rule 10b-5, 17 C.F.R. § 240.10b-5.

15       4.      This Court has jurisdiction over the subject matter of this action pursuant to

16  Section 27 of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78aa and 28

17  U.S.C. § 1331.

18       5.      Venue is proper in this Judicial District pursuant to Section 27 of the Exchange

19  Act and 28 U.S.C. §1391(b).  Many of the acts and transactions constituting the violations of law

20  alleged herein, including the dissemination to the investing public of false and misleading

21  information, occurred in substantial part in this Judicial District.  In addition, Peregrine maintains

22  its corporate headquarters within this District and has substantial operations in Del Mar and other

23  San Diego locations.

24       6.      In connection with the acts, transactions, and conduct alleged herein, Defendants,

25  directly and indirectly, used the means and instrumentalities of interstate commerce, including the

26  United States mails, interstate telephone communications, and the facilities of the national securities

27  exchanges.

28  / / /

## THE PARTIES

7. Plaintiff Alan Marshall is a San Diego resident and purchased shares of Peregrine during the Class Period and was damaged thereby. A copy of his Certification is attached hereto.

8. Defendant Peregrine maintains its principal place of business in Southern California at Del Mar, California, County of San Diego. During the Class Period, Peregrine common stock was actively traded on the NASDAQ exchange. According to the Company's press releases, Peregrine purports to be a leading provider of software designed to reduce "the frictional cost of doing business" and thereby addresses infra structure resource management, employee relationship management and e-commerce technologies.

9. Defendant John J. Moores was a member of the board during portions of the Class Period and has been instrumental to the ownership structure and business organization of Peregrine.

10. Defendant Steve Gardner was a key member of Peregrine management and an executive insider holding the title of Peregrine's chairman and chief executive officer during the Class Period.

11. Defendant Matt Glass was a key member of Peregrine management and an executive insider holding the title of Peregrine's chief financial officer during the Class Period.

12. By reason of their positions with the Company and their attendance at management and/or board of directors meetings Defendants Gardner, Glass and Moores (sometimes the "Individual Defendants") had access to internal Company documents, reports and other information, including the adverse non-public information concerning the Company's business, financial condition, and future prospects and thereby were charged with ensuring the truthfulness and accuracy of the Company's public reports and releases.

13. The Individual Defendants, because of their positions with the Company, controlled and/or possessed the power and authority to control the contents of quarterly reports, press releases, and presentations to securities analysts and, thus, the investing public. Because they prepared the Company's press releases or were provided with copies, they had the ability and opportunity to correct or prevent the issuance of misleading press releases. Nevertheless, the Individual Defendants, who had access to material non-public information, knew or recklessly

1   disregarded that adverse information had not been disclosed to, and was being concealed from, the

2   public and that the positive representations which were being made were materially false and

3   misleading.

4          14.   Each Defendant is liable as a primary violator, for making materially false and

5   misleading statements, and for participating in a fraudulent scheme that operated as a deceit on the

6   public purchasers of Peregrine stock during the Class Period.  Peregrine and the Individual

7   Defendants pursued a fraudulent scheme in furtherance of their common goal (*i.e.*, inflating the price

8   of Peregrine stock) by making materially false and misleading statements and concealing material

9   adverse information.  The fraudulent scheme was designed to and did: (i) deceive the investing

10   public, including Plaintiff Marshall and persons who purchased the common stock of Peregrine

11   during the Class Period (the "Class"); (ii) artificially inflate the price of Peregrine stock during the

12   Class Period; and (iii) caused Plaintiff and members of the Class to purchase Peregrine stock at

13   inflated prices.

14          15.   Defendants' motive to engage in this conduct included their individual desire to

15   enjoy substantial benefits and financial emoluments that would continue only so long as the

16   appearance of a credible company was maintained.

17          16.   The Individual Defendants, as officers and/or directors of the Company, are

18   controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act. Be

19   reason of their positions with the Company, they were able to and did, directly or indirectly, in whole

20   or in material part, control the content of the public statements issued by or on behalf of the

21   Company. They participated in, and approved the issuance of, such statements made throughout the

22   Class Period, including the materially false and misleading statements and material omissions

23   identified herein.

24          17.   Peregrine and the Individual Defendants, as officers and directors of a publicly

25   held company, had a duty promptly to disseminate truthful and accurate information with respect to

26   Peregrine and promptly to correct any material public statements issued by or on behalf of the

27   Company that had become false or misleading.

28

18.    Each Defendant knew or recklessly disregarded that the misleading statements and omissions complained of herein would adversely affect the integrity of the market for the Company's stock and would cause the price of the Company's common stock to become artificially inflated. Each Defendant acted knowingly or in such a reckless manner as to constitute a fraud and deceit upon Plaintiff and the Class.

19.    Peregrine and the Individual Defendants are jointly and severally liable as direct participants in, and co-conspirators of, the wrongs complained of herein.

## CLASS ACTION ALLEGATIONS

20.    Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons who purchased Peregrine common stock during the Class Period, and who suffered damages thereby. Excluded from the Class are the Defendants, members of the Individual Defendants' families, any entity in which a Defendant has a controlling interest or of which a Defendant is a parent or subsidiary, any entity that is controlled by the Company, and the officers, directors, employees, affiliates, legal representatives, heirs, predecessors, successors and assigns of the Defendants.

21.    The members of the Class are so numerous that joinder is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, the Plaintiff believes there are, at a minimum, thousands of members of the Class who traded during the Class Period.

22.    Common questions of law and fact exist as to all members of the Class and predominate over questions which only affect individual members of the Class. Among the questions of law and fact common to the Class are:

(a)    Whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)    Whether the Company issued false and misleading financial statements during the Class Period;

(c)    Whether the Individual Defendants caused Peregrine to issue false and misleading financial statements during the Class Period;

ALAN MARSHALL V. PEREGRINE SYSTEMS, INC., ET AL.

        (d)      Whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

        (e)      Whether the market prices of the Company's securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

        (f)      Whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

22.      Plaintiff's claim, which arise out of Defendants' wrongful conduct in violation of federal law as complained of herein, is typical of the claims of the members of the Class.

23.      Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class actions and securities litigation. Plaintiff has no interests antagonistic to, or in conflict with, those of the Class.

24.      A class action is superior to other available methods for the fair and efficient adjudication of the controversy since joinder of all members of the Class is impracticable. Furthermore, because the damages suffered by the individual Class members may be relatively small, the expense and burden of individual litigation would prevent Class members from individually redressing the wrongs done to them.  Management of this action as a class action will not present difficulty.

25.      Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

        i.      Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

        ii.      The omissions and misrepresentations were material;

        iii.      The securities of the Company traded in an efficient market;

        iv.      The misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

        v.      Plaintiff and members of the Class purchased their Peregrine stock between the time Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

ALAN MARSHALL V. PEREGRINE SYSTEMS, INC., ET AL.

26.     Based upon the following, Plaintiff and members of the Class are entitled to the presumption of reliance based upon the integrity of the market.

### NO STATUTORY SAFE HARBOR

27.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the false statements or omissions pleaded in this complaint, because none of those statements were identified as "forward-looking" when made.  Nor did Defendants supply meaningful cautionary language identifying important factors that could cause actual results to differ materially from the results put forth in their statements.  Furthermore, even if Defendants' false statements pleaded herein are deemed to be forward-looking, those statements are not protected by the statutory safe harbor, because at the time each statement was made either Defendants had knowledge that the forward-looking statement was false or the statement was authorized or approved by an executive officer of the Company with actual knowledge that the statement was false.

28.     This lawsuit reveals a systematic and intentional failure on the part of Defendants to disclose material adverse information concerning the status of the Company, its operations and the resulting deterioration of its financial results.

29.     At a point in time commencing at least as early as the beginning of the Class Period, Defendants made a conscious and intentional decision to inflate the share price of Peregrine in order to maximize the use of Peregrine stock as "currency" to make or propose certain acquisitions needed to maintain Peregrine as a viable operation.

30.     At a point in time commencing at least as early as the beginning of the Class Period, Defendants made a conscious and intentional decision to inflate the share price of the stock for the additional purpose of stabilizing stock owned by some of the Individual Defendants at prices greater than would otherwise be available.  These transactions by the Individual Defendants were in part intended to perpetuate substantial salaries and benefits and stabilize borrowing necessary to at least on of the Individual Defendants.

31.     The Defendants were successful in their intentional misconduct intended to artificially inflate the share price of Peregrine.  Based on the material misstatements of material facts

and, equally pernicious, omission of material facts, on or about the beginning of the Class Period, Peregrine stock was trading at over $50.00 per share. This was the result of material misinformation and concealment of material fact effected by the Defendants in documents for which Defendants were responsible including the Company's 10-K, 10-Q and related press releases and analyst briefings regarding the business operations of Peregrine.

32.     Material misinformation continued to be intentionally disseminated into the market place during the Class Period as consistently exemplified by Defendants' quarterly financial reports. Defendants inflated the stock price of Peregrine securities though improper and inaccurate public documents, press releases and analyst briefings regarding the status of business and that were intended by the Defendants to inflate the stock price. For the twelve (12) months ending March 31, 2001, Defendants showed revenue of $564.7 million compared to $253.3 million a year earlier and $138.1 million the year prior. Normalized pre-tax income per the year ending March 31, 2001 was represented as over $116 million and contrasted with $50.6 million for the year earlier period.

33.     The above was intended to and in fact was viewed in the investment community as positive business developments representing expanding business prospects in the software sector. This fact was reflected in six analyst "Buy" or "Strong Buy" recommendations and only one "Sell" (no "Strong Sell"). Analyst estimates for the future showed strong projected revenue growth.

34.     In conjunction with Defendants' intent to secrete the true condition of Peregrine, no mention was made during the Class Period of any change in the way, method, manner, or procedures regarding the booking of Peregrine business. This was consistent with Defendants' conduct throughout the Class Period and Peregrine announced a series of joint proceedings with very credible software companies that enhanced its credibility and rationalized the gradual decline of Peregrine stock.

35.     While not immediately or easily comprehended by the public investment community with regard to the scope and impact of certain announcements concerning Peregrine, Defendants' May 6, 2002 disclosure in fact provided the first, albeit fragmentary, revelation that earlier material disclosures by the Defendants were misleading either directly or by the omission of material facts. This misinformation included the following:

1.  Peregrine had materially misstated the gravamen of its business model in a manner which substantially increased reported revenues;

2.  Peregrine materially altered its revenue recognition criteria to respond to competition and create the impression of core competencies; and

3.  Peregrine materially manipulated its revenue recognition policy to an improper basis which would substantially impact reported revenues and certain indicia of profit.

36.     A significant revenue recognition policy which was entirely improper and not disclosed throughout the Class Period was Defendants 'practice of posting and accruing shipments as revenue where such treatment was improper.  In order to facilitate their goal of artificially inflating Peregrine stock during the Class Period it was essential for Defendants to ensure that Peregrine met or exceeded the revenue expectations and forecasts analysts had made in response to information disclosed to the market by Defendants. Defendants accomplished this through improper accounting methods which recognized highly questionable sales as instant revenue.

37.     On May 6, 2002, Defendants Gardner and Glass ceased to be employed by Peregrine.

38.     On May 6, 2002, the Company publicly announced that the problems regarding financial reporting at Peregrine were far greater than suspected.

39.     Peregrine's scheme violated the accounting rules and principles described in paragraphs 40 – 51 below in violation of federal securities laws and to the detriment of Plaintiff and members of the Class.

40.     At all relevant times during the Class Period, Defendants represented that Peregrine's financial statements when issued were prepared in conformity with Generally Accepted Accounting Principles ("GAAP"), which are recognized by the accounting profession and the SEC as the uniform rules, conventions, and procedures necessary to define accounting practice at a particular time.  However, in order to artificially inflate the price of Peregrine stock for other purposes Defendants used improper accounting practices in violation of GAAP and SEC reporting requirements to falsely report inflated revenues and sales for the fiscal years during the Class Period.

41.     As set forth in SEC Rule 4-01(a) of Regulation S-X, "[f]inancial statements filed with the [SEC] which are not prepared in accordance with [GAAP] will be presumed to be misleading or inaccurate" 17C.F.R. § 210.4-01(a)(1).

42.     As a result of accounting improprieties, particularly with respect to the Company's revenue recognition policies, Defendants caused Peregrine's reported financial results to violate, among other things, the following provisions of GAAP:

(a)     The principle that financial reporting should provide information that is useful to present and potential investors and creditors and other users in making rational investment, credit and similar decisions;

(b)     The principle that financial reporting should provide information about how management of an enterprise has discharged its stewardship responsibility to owners (stockholders) for the use of enterprise resources entrusted to it.  To the extent that management offers securities of the enterprise to the public, it voluntarily accepts wider responsibilities for accountability to prospective investors and to the public in general;

(c)     The principle that financial reporting should provide information about an enterprise's financial performance during a period.  Investors and creditors often use information about the past to help in assessing the prospects of an enterprise.  Thus, although investment and credit decisions reflect investors' expectations about future enterprise performance, those expectations are commonly based at least partly on evaluations of past enterprise performance;

(d)     The principle that financial reporting should be reliable in that it represents what it purports to represent.  The notion that information should be reliable as well as relevant is central to accounting;

(e)     The principles of completeness, which means that nothing is left out of the information that may be necessary to ensure that it validly represents underlying events and conditions;

(f)     The principle that conservatism be used as a prudent reaction to uncertainty to try to ensure that uncertainties and risks inherit in business situations are adequately

considered.  The best way to avoid injury to investors is to try to ensure that what is reported represents what it purports to represent.

43.     Peregrine's method of enhancing financial projections by prematurely recognizing revenue associated with false or improper software sales violated GAAP by improperly accounting for revenue as set forth herein.  Specifically the Company violated:

(a)     Statements of Financial Concepts (FASCON") No. 6, *Elements of Financial Statements* ¶78, which describes revenues as "inflows or other enhancements of assets of an entity or settlement of its liabilities (or a combination of both)from delivering or producing goods, rendering services, or other activities that constitute the entity's ongoing major or central operations";

(b)     FASCON No. 5, *Recognition and Measurement in Financial Statements of Business Enterprises* ¶ 83, which describes the criteria for the recognition of revenues, in part as "... recognition involves consideration of two factors (a) being realized or realizable and (b) being earned. . ."

(c)     Statement of Position ("SOP") 97-2, *Software Revenue Recognition*, which states that "revenue should be recognized when all of the following criteria are met.

- Persuasive evidence of an arrangement exists.
- Delivery has occurred.
- The vendor's fee is fixed or determinable.
- Collectibility is probable.

(d)     Statement of Financial Accounting Standards ("FAS") No. 5, *Accounting for Contingencies*, provides the guidance for the accrual of loss contingencies.  ¶ 8 states that "An estimated loss from a loss contingency shall be accrued by a charge to income if *both* of the following conditions are met:

a.     Information available prior to the issuance of financial statements indicates that it is probable that an asset had been impaired or a liability had been incurred at the date of the financial statements.  It is implicit in

1    this condition that it must be probable that one or more future events will occur

2    confirming the fact of loss.

3        b.    The amount of loss can be reasonably estimated.

4    51.    APB 22 states that disclosure of accounting policies should identify and describe

5    the accounting principles followed by the reporting entity and the methods of applying those

6    principles that materially affect the determination of financial position, changes in financial position,

7    or results of operations.

8    ## COUNT ONE

9    ## VIOLATION OF SECTION 10(b) OF THE EXCHANGE ACT AND
     ## RULE 10b-5 OF THE SECURITIES AND EXCHANGE COMMISSION

10

11    52.    Plaintiff repeats and realleges each and every allegation contained in the foregoing

12    paragraphs as if fully set forth herein.

13    53.    This Count is asserted against all Defendants and is based upon Section 10(b) of

14    the 1934 Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder.

15    54.    During the Class Period, Defendants, singly and in concert, engaged directly in a

16    common plan, scheme, and unlawful course of conduct, pursuant to which they knowingly or

17    recklessly engaged in acts, transactions, practices, and courses of business which operated as a fraud

18    and deceit upon Plaintiff and the other members of the Class.  They made various deceptive and

19    untrue statements of material fact and omitted to state material facts necessary to make the

20    statements made, in light of the circumstances under which they were made, not misleading to

21    Plaintiff and the other members of the Class.  The purpose and effect of said scheme, plan, and

22    unlawful course of conduct was, among other things, to induce Plaintiff and the other members of

23    the Class to purchase and/or maintain Peregrine common stock during the Class Period at artificially

24    inflated prices.

25    55.    During the Class Period, Defendants, pursuant to said scheme, plan, and unlawful

26    course of conduct, knowingly and recklessly issued, caused to be issued, and participated in the

27    preparation and issuance of deceptive and materially false and misleading statements to the investing

28    public as particularized above.

ALAN MARSHALL V. PEREGRINE SYSTEMS, INC., ET AL.

56.     During the Class Period, Peregrine acted through the Individual Defendants, whom it put forth to the financial press and public as its valid representatives. The willfulness, motive, knowledge, and recklessness of the Defendants are therefore imputed to Peregrine, which is primarily liable for securities law violations of the Individual Defendants committed while acting in their official capacities as Company representatives and owner(s), or, in the alternative, which is liable for the acts of the Individual Defendants under the doctrine of *respondeat superior*.

57.     As a result of the dissemination of the false and misleading statements or omissions set forth above, the market price of Peregrine common stock was artificially inflated during the Class Period. Unaware of the false and misleading nature of the statements or omissions described above and the deceptive and manipulative devices and contrivances employed by said Defendants, Plaintiff and the other members of the Class relied, to their detriment, on the integrity of the market price of the stock in purchasing Peregrine common stock. Had Plaintiff and the other members of the Class known the truth, they would not have purchased said shares or would not have purchased them at artificially inflated prices.

58.     Plaintiff and the other members of the Class have suffered substantial damages as a result of the wrongs herein alleged in an amount to be proved at trial.

59.     By reason of the foregoing, Defendants directly violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder in that they: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class in connection with their purchases of Peregrine common stock during the Class Period.

## COUNT II

## VIOLATION OF SECTION 20(a) OF THE EXCHANGE ACT

60.     Plaintiff repeats and realleges each and every allegation contained in each of the foregoing paragraphs as if set forth fully herein.

///

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

61.     During the Class Period, the Individual Defendants, by virtue of their positions, stock ownership, and/or specific acts described above, were, at the time of the wrongs alleged herein, controlling persons within the meaning of Section 20(a) of the 1934 Act.

62.     The Individual Defendants had and exercised the power and influence to cause Peregrine to engage in the illegal conduct and practices complained of herein.

63.     By reason of the conduct alleged in Count I of the Complaint, the Individual Defendants are liable for the aforesaid wrongful conduct, and are liable to Plaintiff and to the other members of the Class for the substantial damages which they suffered in connection with their purchases of Peregrine common stock during the Class Period.

WHEREFORE, Plaintiff, on his own behalf and on behalf of the Class, prays for judgment as follows:

A.     Declaring this action to be a proper class action and certifying Plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure;

B.     Awarding compensatory damages in favor of Plaintiff and other members of the Class against Defendants for the damages sustained as a result of the wrongdoings of Defendants, together with interest thereon;

C.     Awarding Plaintiff the fees and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys and experts;

D.     Granting extraordinary equitable and/or injunctive relief as permitted by law, equity and federal and state statutory provisions sued on hereunder; and

E.     Granting such other and further relief as the Court may deem just and proper.

///
///
///
///
///
///
///

1

## PLAINTIFF DEMANDS A JURY TRIAL

2          Plaintiff hereby demands a trial by jury.

3   Dated:  May 6, 2002                        FINKELSTEIN & KRINSK

4

5                                          By: _____
                                               Jeffrey R. Krinsk, Esq.
6                                              Mark L. Knutson, Esq.

7                                              501 West Broadway, Suite 1250
                                               San Diego, CA 92101
8                                              Telephone:619/238-1333
                                               Facsimile:  619/238-5425
9
                                               Attorneys for Plaintiff ALAN MARSHALL
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FINKELSTEIN & KRINSK
501 West Broadway, Suite 1250
San Diego, CA 92101
(619) 238-1333

## CERTIFICATION OF PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

The undersigned declares, as to the claims asserted under the federal securities laws, that:

1.     The undersigned has reviewed the complaint and approves its filing.

2.     The undersigned did not purchase the security that is the subject of this action at the direction of counsel or in order to participate in this lawsuit.

3.     The undersigned is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.     The undersigned's transaction(s) of Peregrine Systems, Inc. during the Class Period is/are as follows:

| # of Shares | Transaction Date(s) | Purchase/Sale Price |
|---|---|---|
| 100 | 09/25/01 | $16.31 |
| 300 | 12/20/01 | $14.53 |

5.     During the three years prior to the date of this Certificate, the undersigned has sought to serve or served as a representative party for a class in the following actions filed under the federal securities laws:  None.

6.     The undersigned has sought to serve or served as a representative party for a class in the following actions under the federal securities laws filed subsequent to December 22, 1995: None.

7.      The undersigned will not accept any payment for serving as a representative party on behalf of the class beyond the undersigned's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 6th day of _____MAY_____, 2002.

_____
Signature

_____
Print Name

JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

ALAN MARSHALL, on Behalf of Himself and All Others Similarly Situated

**DEFENDANTS** PEREGRINE SYSTEMS, INC.; JOHN J. MOORES; STEVE GARDNER; MATT GLASS; AND CHRISTOPHER COLE

**(b)** County of Residence of First Listed Plaintiff    SAN DIEGO
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Jeffrey R. Krinsk, Esq.   619/238-1333
FINKELSTEIN & KRINSK
501 W. Broadway, #1250, San Diego, CA  92101

Attorneys (If Known)

'02 CV 0870 J (RBB)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question (U.S. Government Not a Party)
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | ☐ 423 Withdrawal | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury— | of Property 21 USC 881 | 28 USC 157 | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 820 Copyrights | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 830 Patent | ☐ 810 Selective Service |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | ☐ 840 Trademark | ☒ 850 Securities/Commodities/ |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | Exchange |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | | **SOCIAL SECURITY** | ☐ 875 Customer Challenge |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | **LABOR** | ☐ 861 HIA (1395ff) | 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| | | | | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | & Disclosure Act | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff | Under Equal Access to |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | Habeas Corpus: | | or Defendant) | Justice |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 871 IRS— Third Party | ☐ 950 Constitutionality of |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | 26 USC 7609 | State Statutes |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. | | ☐ 890 Other Statutory Actions |
| | | ☐ 550 Civil Rights | Security Act | | |
| | | ☐ 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from another district (specify)
- ☐ 6  Multidistrict Litigation
- ☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Sections 10(b) and 20(a) of the Exchange Act, 15 USC §§78j(b), 78t(a); Rule 10b-5, 17 CFR §240.10b-5

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ according to proof

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE                DOCKET NUMBER

DATE  May 6, 2002         SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # 082202  AMOUNT $150.00  APPLYING IFP  JUDGE  MAG. JUDGE