02cv870

```
┌─────────────────────────────────┐
│            FILED                │
│                                 │
│          JUL 2 3 2007           │
│                                 │
│     CLERK, U.S. DISTRICT COURT  │
│  SOUTHERN DISTRICT OF CALIFORNIA│
│  BY                     DEPUTY  │
└─────────────────────────────────┘
```

## BEFORE THE JUDICIAL PANEL ON
## MULTIDISTRICT LITIGATION

**In re** Peregrine Systems, Inc. Sec. Litig.                    MDL — _____

## JOINT MOTION FOR TRANSFER OF ACTION TO THE SOUTHERN DISTRICT OF CALIFORNIA UNDER 28 U.S.C. § 1407 FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS

Defendant Arthur Andersen LLP and plaintiff David Hildes respectfully move under 28

U.S.C. § 1407 for an order transferring *David Hildes et al. v. Arthur Andersen LLP et al.*, Case

No. 07-CV-393 SRC (CCC), from the District of New Jersey to the Southern District of

California.

BINGHAM McCUTCHEN LLP
Scott Vick
1620 26th Street
Fourth Floor, North Tower
Santa Monica, CA  90404-4060
Telephone:      310.907.1000
Facsimile:       310.907.2000
Email:            scott.vick@bingham.com

By:_____

Scott Vick
Counsel for Defendant
ARTHUR ANDERSEN LLP


LOWENSTEIN SANDLER PC
David L. Harris
65 Livingston Avenue
Roseland, NJ 07068
Telephone:      973.597.2378
Facsimile:       973.597.2379
Email:            dharris@lowenstein.com


KAYE SCHOLER LLP
Allan Pepper
425 Park Avenue
New York, NY 10022
Telephone:      (212) 836-7366
Facsimile:       (212) 836-6304
Email:            apepper@kayescholer.com

By:_____

Allan Pepper
Counsel for Plaintiff
DAVID HILDES

## BEFORE THE JUDICIAL PANEL ON
## MULTIDISTRICT LITIGATION

**In re** Peregrine Systems, Inc. Sec. Litig.                    MDL — _____

## BRIEF IN SUPPORT OF JOINT MOTION FOR TRANSFER OF ACTION
## UNDER 28 U.S.C. § 1407

## I.      BACKGROUND

Defendant Arthur Andersen LLP ("Andersen") and plaintiff David Hildes seek an order

transferring this action pursuant to 28 U.S.C. § 1407 to the Southern District of California, where

a related consolidated federal securities class action is pending.

### A.      The Consolidated Cases in the Southern District of California

Peregrine Systems, Inc. ("Peregrine") was a publicly traded company headquartered in

San Diego, California.  In its role as Peregrine's auditor, Andersen audited, among other things,

Peregrine's annual financial statements for Peregrine's fiscal years ending March 31, 2000, and

issued an unqualified, or "clean," audit report on those financial statements. Defendant Thomas Watrous was one of Peregrine's outside directors.

On May 6, 2002, Peregrine announced that: (i) it had improperly recognized revenue during periods in fiscal 2001 and 2002; (ii) its board of directors had authorized the company's audit committee to conduct an internal investigation; and (iii) two members of Peregrine's senior management with financial reporting responsibility – Stephen P. Gardner (Peregrine's Chairman and Chief Executive Officer) and Matthew Gless (Peregrine's Chief Financial Officer and Executive Vice President of Finance) – had resigned. The company eventually restated its 2000 and 2001 year-end financial statements, and the unaudited quarterly financial statements for the first three quarters of Peregrine's 2002 fiscal year.

In the wake of the May 6, 2002 announcement, thirty-four (34) federal securities class action complaints were filed in, or transferred to, the United States District Court for the Southern District of California by and on behalf of persons who purchased or otherwise acquired publicly-traded securities of Peregrine.

Those thirty-four lawsuits were consolidated under the caption, In re Peregrine Systems, Inc. Securities Litigation, Master File No. 02-cv-0870 (United States District Court, Southern District of California). In consolidating the lawsuit, the judge divided the plaintiffs into two groups: (1) a group of plaintiffs asserting claims under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, and other related fraud-based claims; and (2) a group of plaintiffs asserting claims under Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k, and other related non-fraud claims. In his consolidation order, the Judge held that the actions "(1) arise out of a common set of alleged facts occurring during the same time period; (2) allege the same or common claims against the same or common defendants; and/or (3) involve questions of fact

and/or law." (Consolidation Order at 4:21-24.) To date, no discovery or class certification

proceedings have taken place in the consolidated matter. (*See* Order Granting Final Judgment

Under Rule 54(b) and Staying Action Pending Final Resolution of Appeal at 8:19-20.) The

action is currently stayed pending resolution of an appeal to the Ninth Circuit on an issue related

to scheme liability under Section 10(b). A decision from the Ninth Circuit is expected soon.

### B.     The Hildes Case in the District of New Jersey

In 2006, Andersen settled the claims asserted against Andersen, a former Andersen

engagement partner, and two other entities. Hildes was a member of the putative class in the

consolidated federal securities class action who "opted out" of the Andersen settlement (and a

different settlement involving Defendant Thomas Watrous), and then commenced this opt out

action in the District of New Jersey on January 24, 2007.

In the first paragraph of the complaint, Hildes explains that he is relying, in part, on the

record in the Southern District of California consolidated cases to substantiate his allegations.

(*See* Exh. A, Hildes Complaint ¶1.) Like the second group of plaintiffs in the consolidated

federal securities class action in the Southern District of California, Hildes obtained Peregrine

stock as a result of a merger and seeks recovery under section 11 of the Securities Act based on

Peregrine's alleged misstatements in Peregrine's May 2000 Registration Statement. (*See id.* at

¶¶ 1, 2, 66, 67, 76, 77.) Hildes alleges that Peregrine also made misleading statements in the

Merger/Proxy Prospectus issued in connection with the merger between Peregrine and Harbinger

Corporation. (*Id.* at 1, 41-44, 63, 72.). As in the consolidated cases, Hildes's complaint is a

response to Peregrine's alleged admissions regarding accounting inaccuracies in statements on

May 6, 2002 and May 23, 2002. (*Id.* at ¶¶8, 9.) In addition to those statements, Hildes lists other

Peregrine alleged admissions regarding accounting inaccuracies that post-date the filing of the

complaints in the consolidated cases, including statements on June 30, 2003 and February 28, 2003. (*Id.* at ¶¶56, 58.)

## II.   ARGUMENT

The Judicial Panel on Multidistrict Litigation may transfer an action to another district for coordinated or consolidated pretrial proceedings when the action and a pending action in a different district "involve common questions of fact." 28 U.S.C. § 1407. In addition, centralization should be "for the convenience of the parties and witnesses" and must "promote the just and efficient conduct of such actions." *Id.* A transfer of the Hildes case to the Southern District of California would meet each of these requirements.

### A.   The New Jersey Action and the Southern District of California Action Involve Common Questions of Fact

Like the cases pending in the Southern District of California, the Hildes case involves the very same Section 11 claim based on the very same alleged misrepresentations. The cases present many of the same – if not all of the same – factual and legal questions arising out of Peregrine's accounting inaccuracies. As would be expected, the cases also share many of the same defendants; the defendants in the Hildes case – Arthur Andersen LLP, Thomas G. Watrous, and David A. Farley – were also named in many of the complaints in the California consolidated case. (*See* Consolidation Order at 1:26-28.)

Because the cases are so interconnected, Hildes relies on the record in the consolidated cases, among other things, to support his claims. (*See* Exh. A, Hildes Complaint ¶1.) The Panel has granted transfers in many similar cases. *E.g., In re Qwest Communications Int'l, Inc. Sec. Litig.*, 444 F. Supp. 2d 1343, 1345 (J.P.M.L. 2006) ("Plaintiffs in all actions make similar

allegations against the same or similar defendants, based upon the same alleged financial

irregularities in connection with Qwest securities."); *In re Doral Fin. Corp. Sec. Litig.*, 398 F.

Supp. 2d 1369, 1370 (J.P.M.L. 2005) ("These actions share factual questions arising from

alleged misrepresentations or omissions concerning Doral's financial condition and its alleged

overvaluation of interest only strips-securities Doral retained when it securitized and sold certain

mortgages."); *In re CP Ships Ltd. Sec. Litig.*, 360 F. Supp. 2d 1369, 1370  (J.P.M.L. 2005)

(actions shared allegations concerning whether defendant misrepresented its financial condition

to the public or engaged in improper accounting practices); *In re Fleming Cos. Sec. & Deriv.*

*Litig.*, 269 F. Supp. 2d 1374, 1376 (J.P.M.L. 2003) (actions share factual questions arising out of

alleged misrepresentations or omissions by defendants relating to Fleming's price-impact stores

and its vendor deductions, practices which allegedly inflated the price of Fleming securities).

**B.      Centralization Will Serve the Convenience of the Parties and Promote the
         Just and Efficient Conduct of the Litigation**

Centralization under section 1407 will benefit the parties by placing all of the actions

before a single judge – already familiar with the Peregrine action – who can structure pretrial

proceedings to consider all of the parties' discovery needs, while ensuring that common parties

and witnesses are not subjected to duplicate discovery demands.  In addition, having a single

judge will "prevent inconsistent pretrial rulings[,] and conserve the resources of the parties, their

counsel and the judiciary." *In re Qwest*, 444 F. Supp. 2d at 1345; *accord In re Fleming*, 269 F.

Supp. 2d at 1375.

## C.      The Southern District of California Is an Appropriate Transferee Forum

Lastly, the Southern District of California is an appropriate forum because 34 of the 35

cases are already pending there, many of those cases are at least 5 years old, and the California

judge is familiar with the factual issues surrounding the allegations. *E.g., In re Qwest*, 444 F.

Supp. 2d at 1345 (finding transferee district appropriate forum for the litigation because the class

action proceedings had been pending for over four years and the judge was already familiar with

many of the factual issues); *In re Doral*, 398 F. Supp. 2d at 1370 (finding Southern District of

New York appropriate transferee forum because nearly all of the actions were already pending

there); *In re Fleming*, 269 F. Supp. 2d at 1375 (finding transfer to district in Texas was

appropriate because 14 of the 17 related actions were already pending there and Texas judge was

familiar with litigation).

The Southern District of California is also an appropriate forum because Peregrine's

executive offices were in Southern California where the consolidated cases are pending, and

many of the witnesses are located there.  (*See* Hildes Compl. ¶28.); *see also In re*

*Computervision Corp. Sec. Litig.*, 814 F. Supp. 85, 86 (J.P.M.L. 1993) (concluding that the

District of Massachusetts was an appropriate transferee forum because, among other things, the

defendant was headquartered in Massachusetts).

## III.   CONCLUSION

For the foregoing reasons, defendant Arthur Andersen LLP and plaintiff David Hildes respectfully request an order transferring the Hildes case from the District of New of Jersey to the Southern District of California.

BINGHAM McCUTCHEN LLP
Scott Vick
1620 26th Street
Fourth Floor, North Tower
Santa Monica, CA 90404-4060
Telephone:   310.907.1000
Facsimile:   310.907.2000
Email:   scott.vick@bingham.com

By: _____
Scott Vick
Counsel for Defendant
ARTHUR ANDERSEN LLP

LOWENSTEIN SANDLER PC
David L. Harris
65 Livingston Avenue
Roseland, NJ 07068
Telephone:   973.597.2378
Facsimile:   973.597.2379
Email:   dharris@lowenstein.com

KAYE SCHOLER LLP
Allan Pepper
425 Park Avenue
New York, NY 10022
Telephone:    (212) 836-7366
Facsimile:    (212) 836-6304
Email:        apepper@kayescholer.com

By:_____
      Allan Pepper
      Counsel for Plaintiff
      DAVID HILDES

**EXHIBIT A**

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAVID HILDES, Individually and as Trustee of the THE DAVID AND KATHLEEN HILDES 1999 CHARITABLE REMAINDER UNITRUST DATED JUNE 25, 1999,<br><br>          Plaintiff<br>  vs.<br><br>ARTHUR ANDERSEN, LLP; THOMAS G. WATROUS, SR; and JOHN DOE as the Executor of the ESTATE of DAVID A. FARLEY,<br><br>          Defendants. | CASE NO.:<br><br><br>**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br><br>**DEMAND FOR JURY TRIAL** |

Lori B. Leskin (LL 7115)
**KAYE SCHOLER LLP**
425 Park Avenue
New York, NY 10022
Telephone: (212) 836-8000
Facsimile: (212) 836-8689


Of Counsel:
Allan M. Pepper
**KAYE SCHOLER LLP**
425 Park Avenue
New York, NY 10022
Telephone: (212) 836-8000
Facsimile: (212) 836-8689

*Attorneys for Plaintiff*

31394110.WPD

## TABLE OF CONTENTS

Page

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

JURISDICTION AND VENUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

NO STATUTORY SAFE HARBOR . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

PEREGRINE SWITCHES TO AN IMPROPER METHOD OF REVENUE
RECOGNITION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

THE FALSE AND MISLEADING STATEMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

THE MATERIAL FALSE AND MISLEADING STATEMENTS EMERGE . . . . . . . . . . . . . . 19

DEFENDANTS' CONCEALMENT OF WRONGDOING . . . . . . . . . . . . . . . . . . . . . . . . . 23

COUNT I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
   Against the Individual Defendants For Violations Of Section 11 Of The Securities
   Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

COUNT II . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
   Against Arthur Andersen, LLP For Violations of Section 11 of the Securities Act . . . . 26

PRAYER FOR RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

JURY DEMAND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

## INTRODUCTION

1.     Plaintiff, individually and as trustee for the David and Kathleen Hildes 1999

Charitable Remainder Unitrust Dated June 25, 1999, by and through his attorneys, alleges the

following upon information and belief, except those allegations concerning himself, which are

alleged upon personal knowledge.  Plaintiff's information and belief is based, *inter alia*, on the

review of the documents produced by the litigation trustee of Peregrine Systems, Inc. and

performed by counsel for class plaintiffs' in *In re Peregrine Systems, Inc. Securities Litigation*,

currently pending in the United States District Court for the Southern District of California, and

an investigation conducted by plaintiff's attorneys, including, *inter alia*, a review of a

Registration Statement on Form S-4/A filed by defendant Peregrine Systems, Inc., ("Peregrine"

or the "Company") with the Securities and Exchange Commission ("SEC") on May 22, 2000 (the

"Registration Statement") issued in connection with the merger, completed on or about June 16,

2000, between Peregrine and Harbinger Corporation ("Harbinger") (collectively, the "Merger");

the Joint Proxy Statement and Prospectus included within the Registration Statement (the

"Merger Proxy/Prospectus"); documents incorporated by reference into the Registration

Statement; and other public filings and news articles pertaining to or issued by the Company.

Plaintiff believes that substantial evidentiary support will exist for the allegations set forth after a

reasonable opportunity for discovery.

2.     As is more fully alleged throughout the Complaint, this action arises from

damages incurred by Plaintiff as a result of the issuance by defendants to Plaintiff in New Jersey

of materially false and misleading statements in the Registration Statement and Merger

Proxy/Prospectus, which artificially inflated the value of the Company's securities.

3.      In particular, the Registration Statement and Merger Proxy Prospectus includes the financial statements for the Company's fiscal year 2000 ended March 31, 2000, as well as results for the fiscal year 1999 ended March 31, 1999, both of which were materially overstated. This information was material to Harbinger shareholders, including the Plaintiff, in considering how to vote on the Merger, including whether the Exchange Ratio accurately reflected the value of Peregrine common stock.

4.      Furthermore, the Registration Statement and Merger Proxy Prospectus includes false statements regarding Peregrine's declared method of revenue recognition from indirect software licensing agreements to third party resellers. The Registration Statement and Merger Proxy Prospectus stated that the Company used the proper "sell-through" method of revenue recognition for indirect licensing agreements, which meant that revenue could only be recognized when the software was sold through to the end-user. However, beginning no later than April 1999, Peregrine was in fact using the improper "sell in" method to recognize revenue from this type of transaction, which meant that revenue was recognized as soon as the software was sold-in to the third party reseller, even though there was no commitment by the third party to sell the product, or even an identified end-user for the product. It engaged in this practice in order to maintain the appearance of revenue growth.

5.      This improper method of revenue recognition was in violation of not only Peregrine's stated policies, but also the Generally Accepted Accounting Principles ("GAAP"), and was not disclosed in the Registration Statement and Merger Proxy Prospectus.

6.      As a result of defendants' false statements, misrepresentations, and omissions, the price of Peregrine securities was artificially inflated at the time of the Merger. Peregrine shares closed at $25.56 per share on June 16, 2000, the closing date of the Merger.

7.     It was not until the close of trading on April 30, 2002 -- nearly two years after the

Merger -- that the Company announced that it would delay its planned earnings release and

conference call to announce its financial results for its fourth quarter 2002 and the 2002 fiscal

year ended March 31, 2002 because its new auditor, KPMG, required additional time to complete

its audit.  On that announcement, the price of Peregrine shares plummeted from $6.85 to close at

a 52-week low of $3.45 on May 1, 2002, a loss of over 49% in one day on heavy trading.  The

price of Peregrine stock continued to plummet, closing at $2.57 on May 3, 2002.

8.     The Company also disclosed in a May 6, 2002 press release that its Board of

Directors had authorized its audit committee to "conduct an internal investigation into potential

accounting inaccuracies brought to the attention of the audit committee by KPMG, the

Company's independent auditors."  The Company further disclosed that certain transactions

involving revenue recognition irregularities, totaling as much as $100 million, have been called

into question and may have been recorded during periods in fiscal 2001 and 2002.

9.     In the same May 6, 2002 press release, the Company announced the resignation of

the Company's two top officers, Chairman and Chief Executive Officer Stephen P. Gardner

("Gardner") and Chief Financial Officer Matthew C. Gless ("Gless").  Following the Company's

disclosures, the price of Peregrine stock continued its free fall, plunging 65% to close at $0.89 on

May 6, 2002 on extraordinary volume of 129,957,300 shares as compared to the Company's

192,308,000 outstanding shares and 30-day average trading volume of 3,902,000 shares.

10.    Finally, on May 23, 2002, Peregrine announced that it would restate results for

fiscal year 2000, as well as for fiscal year 2001 and the first three quarters of fiscal year 2002.  In

addition, Peregrine announced that the SEC had begun an investigation into its accounting

practices.

31394110.WPD                                          5

11.    On February 28, 2003, Peregrine filed with the SEC restated financial results for

fiscal years 2000 and 2001 and the first three reporting quarters of fiscal year 2002. These

restated results demonstrate that Peregrine's revenues actually declined by approximately 5%,

from $138,063,000 to $131,632,000, from fiscal year 1999 to fiscal year 2000, rather than

increased nearly 83%, from $138,063,000 to $253,300,000, as misrepresented in the Registration

Statement and Merger Proxy Prospectus. These restated financial results were from

Pricewaterhouse Coopers, Peregrine's independent auditors after KPMG, and have been accepted

unchallenged by the *In re Peregrine* bankruptcy court, the SEC, the IRS, and Peregrine's

shareholders and creditors.

12.    The false and misleading financial statements included in the Registration

Statement caused Peregrine's common stock price to be artificially inflated at the time of the

Merger. As a result, the Exchange Ratio utilized in the Merger was artificially deflated and

Harbinger shareholders, like Plaintiff, who exchanged their Harbinger common stock for

Peregrine common stock in connection with the Merger were harmed by having received

insufficient value for their Harbinger common stock.


                            **JURISDICTION AND VENUE**

13.    This Court has jurisdiction over the subject matter of this action under Section 22

of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77v. The claims asserted herein

arise under Sections 11 of the Securities Act, 15 U.S.C. §§ 77k.

14.    Venue is proper in this District pursuant to Section 22 of the Securities Act and

28 U.S.C. §§ 1391(b) and 1391(c). The offer and sale of Peregrine stock occurred in this

District, and the violations of law complained of herein occurred in this District, including the

dissemination of materially false and misleading statements and the omission of material

information complained of herein.

15.     In connection with the conduct complained of herein, defendants, directly or

indirectly, used the means and instrumentalities of interstate commerce, including the mails and

interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

16.     Prior to the Merger, the Plaintiff held shares of Harbinger common stock that

were exchanged for shares of Peregrine common stock in connection with the Merger, and

Plaintiff was damaged thereby.

17.     Defendant Thomas G. Watrous, Sr. ("Watrous") served as a member of the Board

of Directors of Peregrine from January 1999 through at least May 2002. He became a member of

the Audit Committee of Peregrine's Board of Directors on April 17, 2000. Watrous was a senior

partner with the management consulting firm of Andersen Consulting (now known as

Accenture), which was previously an affiliate of defendant Arthur Andersen LLP.     Defendant

Watrous signed the Registration Statement.

18.     Defendant John Doe is the executor of the Estate of David A. Farley ("Farley").

Farley died in late 2000. John Doe is a fictitious name, becaue Plaintiff has not yet been able to

determine Farley's executor's true identity despite a diligent search. Farley was at all relevant

times the Company's Chief Financial Officer.   Because of Defendant Farley's positions with

Peregrine, he had access to adverse, non-public information about the Company's method of

reporting revenues. Defendant Farley signed the Registration Statement.

19.     The above individual defendants in paragraphs 17 and 18 (the "Individual

Defendants") each signed, and/or consented to being named as a director and/or officer of

31394110.WPD                                    7

Peregrine in the Registration Statement and/or the Merger Proxy/Prospectus, pursuant to which

Peregrine issued securities in connection with its Merger with Harbinger.

     20.    The Individual Defendants participated in the drafting, preparation, and/or

approval of various false and misleading statements contained in the Registration Statement and

Merger Proxy/Prospectus filed by the Company with the SEC in connection with the Merger.

Because of their Board memberships and/or executive and managerial positions, each of the

Individual Defendants was responsible for ensuring the truth and accuracy of the various

statements contained in the Registration Statement and Merger Proxy/Prospectus, including the

truth of the reported financial results of Peregrine.

     21.    Each of the Individual Defendants had a duty to promptly disseminate accurate

and truthful information with respect to the Company's true operational and financial condition

and to promptly correct any previously disseminated false or misleading information. As a result

of their failure to do so in connection with the preparation and filing of the Registration

Statement and Merger Proxy/Prospectus, the price of Peregrine common stock was artificially

inflated prior to, and at the time of, the Merger, causing the Exchange Ratio to be artificially

deflated and causing injury to Plaintiff.

     22.    The Individual Defendants, because of their management positions and

memberships on the Peregrine Board, had the power and influence to direct the management and

activities of Peregrine, and its employees, and to cause Peregrine to engage in the unlawful

conduct complained of herein. Accordingly, the Individual Defendants were able to, and did,

control the contents of the Registration Statement and Merger Proxy/Prospectus. Each Individual

Defendant was provided with copies of the filings alleged herein to be false and misleading prior

31394110.WPD                        8

to, or shortly after their issuance, and had the ability and opportunity to prevent their issuance and/or to cause them to be corrected, but failed to do so.

23.     Defendant Arthur Andersen LLP ("Andersen") served as Peregrine's outside auditor at the time of the Merger, and had served as such since 1996. Andersen was the Company's auditor until April 2, 2002, when the Company announced that it had terminated Andersen, effective immediately, and appointed KPMG LLP as its outside auditor. Andersen issued an unqualified audit opinion, dated April 25, 2000, on Peregrine's financial results for its fiscal year ending March 31, 2000 contained in the Merger Proxy/ Prospectus. Andersen falsely represented in its unqualified opinion on Peregrine's fiscal year 2000 financial statements which were contained in the Merger Proxy/Prospectus that the financial statements were presented in accordance with Generally Accepted Accounting Principles ("GAAP") and that Andersen performed its audit of Peregrine in accordance with Generally Accepted Auditing Standards ("GAAS"). Andersen allowed the false statements in its unqualified audit opinion to be used in the Merger Proxy Prospectus. In fact, Peregrine's revenues and related receivables were materially overstated, which resulted in an overstatement of revenues and earnings for the fiscal year 2000. By virtue of its position as the purported independent auditor for Peregrine, Andersen had access to the Company's key personnel, accounting, books and records and transactional documents, such as software licensing agreements, and to the Company's key customers, at all relevant times. As a result of the auditing and other services performed by Andersen, Andersen personnel were frequently present at Peregrine's corporate headquarters and had continual access to and knowledge of the Company's confidential internal corporate, financial, operating and business information, and had the opportunity to observe and review the Company's business and accounting practices and to test the Company's internal and publicly reported financial

statements, as well as the Company's internal controls. On April 5, 2002, Arthur Andersen was replaced by KPMG LLP as Peregrine's independent auditor. Arthur Andersen was paid approximately $4 million in fees for its auditing, accounting, and consulting work for Peregrine since being retained in July 1996.

24.    Andersen's audit opinion was false and materially misleading because it failed to note, in either the textual portion of the opinion letter or in any accompanying footnotes to the financial statements, that Peregrine's Board had approved a material change in accounting policy in April 1999 (*see* ¶¶ 32-36) from the proper sell-through method to the improper sell-in method. This change materially impacted the fourth quarter of fiscal year 1999 results that were incorporated in the fiscal year-end results that Andersen had audited. The change to the sell-in method was designed to provide Peregrine with an immediate revenue and earnings boost so that it could meet its own published expectations for the fiscal quarter and fiscal year. It was known to Andersen that the policy had been changed to apply to the fourth quarter of fiscal year 1999. Andersen also knew that the revenue recognition policy was changed to provide for revenue recognition immediately upon execution of a software licensing agreement with third party resellers even though there was no commitment to pay and no identified end user committed to pay, and to allow the Company to meet published earning and revenue forecasts. Andersen knew that the Company's published descriptions of its revenue recognition policy were materially inaccurate in light of the change Peregrine made to use the improper sell-in method of revenue recognition rather than the proper sell-through method of revenue recognition method.

25.    Each defendant is liable to Plaintiff as a direct participant in the wrongs complained of herein.

## NO STATUTORY SAFE HARBOR

26.     The statutory safe harbor provided for forward-looking statements (under certain circumstances) does not apply to any of the false statements and material omissions alleged in this complaint. The statements alleged to be false and misleading all relate to then-existing facts and conditions. In addition, none of the statements alleged herein were identified as "forward-looking statements" when made. Nor did meaningful cautionary language identify important factors that could cause actual results to differ materially from those stated. To the extent that the statutory safe harbor does apply to any statements alleged herein deemed to be forward-looking, defendants nonetheless are liable for issuing false forward-looking statements because, at the time each of the statements was made, the statements were authorized and/or approved by an executive officer of Peregrine.

## PEREGRINE SWITCHES TO AN IMPROPER METHOD OF REVENUE RECOGNITION

27.     Peregrine was a publicly traded company and claimed to be a global provider of software and services for infrastructure resource management, employee relationship management and e-commerce technologies.

28.     Peregrine was incorporated in California in 1981 and reincorporated in Delaware in 1994. Its principal executive offices were located at 3611 Valley Centre Drive, San Diego, California 92130. Peregrine pursued an aggressive growth-by-acquisition strategy and completed the acquisition of several businesses and technologies. By April 2001, Peregrine had acquired 12 companies in transactions valued at over $2.2 billion, including the acquisition of Harbinger, an electronic data interchange provider, for $1.45 billion on June 16, 2000 ("the Merger"). On September 22, 2002, Peregrine filed for bankruptcy under Chapter 11 of the United States

Bankruptcy Code.  Peregrine was acquired by the Hewlett-Packard Company on December 19, 2005.

29.    Under the "Generally Accepted Accounting Principles" ("GAAP"), the decision as to whether revenue from licensing computer software should be recognized and, if so, in what amounts, must follow the procedures set forth in the "Statement of Position 97-2 - Software Revenue Recognition" (the "SOP").

30.    Paragraph 8 of the SOP provides that, for software that does not require significant production, modification, or customization, revenue from licensing the software should be recognized only when all of the following criteria are met:

     a.    persuasive evidence of an arrangement exits;

     b.    delivery has occurred;

     c.    the vendor's fee is fixed or determinable; and

     d.    collectibility is probable.

This method of revenue recognition is known as "sell through."

31.    As detailed below (*see* ¶¶ 40-46), Peregrine's revenue recognition policy, which appeared in the Merger Proxy/Prospectus Financials, is consistent with the SOP, as detailed below.  In brief, Peregrine stated in the Merger Proxy/Prospectus that for the fiscal years 1998, 1999 and 2000:

> Revenues from direct and indirect license agreements are recognized currently, provided that all of the following conditions are met:  a noncancellable license agreement has been signed, the product has been delivered, there are no material uncertainties regarding customer acceptance, collection of the resulting receivable is deemed probable, risk of concession is deemed remote, and we have no other significant obligations associated with the transaction.

Therefore, Peregrine's stated revenue recognition policy was on a "sell through" basis, because revenue could only be recognized when the product was sold-through to the ultimate end-user.

32.     However, beginning in early 1999, in order to meet Peregrine's revenue goals, top executives of Peregrine, including defendant Farley, made the decision to immediately recognize revenue from indirect licensing agreements with third party resellers. This was known as the "sell-in" method of revenue recognition, because revenue was recognized when the product was sold-in to the third party reseller. This was clearly improper, as it violated most of Peregrine's and GAAP's criteria for revenue recognition from indirect licensing agreements, as detailed below. (*see* ¶ 51).

33.     This decision to improperly recognize revenue from indirect licensing agreements to third party resellers was first made on a transaction with IBM Global Services. Defendant Farley, President and Chief Executive Officer Stephen Gardner and Executive Vice President of Worldwide Operations Douglas Powanda decided at a meeting in early 1999 that they would immediately book as revenue the transaction with IBM in order to meet Peregrine's revenue goals, even though there was no commitment to pay for the products involved nor any identified end-user.

34.     At the April 1999 Peregrine Board meeting, the board discussed the recent increase in indirect licensing agreements, also known as indirect channel sales, and their anticipated future growth. Defendant Farley presented to the Board the issue of whether to apply the "more aggressive" sell-in method of revenue recognition from indirect channels.

35.     Farley told the board that the sell-in method was not the "preferred" method of accounting. The preferred method was the sell-through method. However, he explained that it was only by using the sell-in method that the Company could meet its financial goals for the prior

quarter (the fourth quarter of fiscal year 1999), which had ended three weeks earlier, and its future revenue goals. He warned that, without adopting the sell-in approach, the Company would fail to meet the expectations of the stock market. Board members Steven Gardner, John J. Moores (who was also Chairman of the Board), Richard Nelson, Charles Noell, Christopher Cole, Richard Hosley, Norris van den Berg and defendant Thomas Watrous specifically approved the change from the proper sell-through method to the improper sell-in method at the April 1999 Board meeting.

36.   As a result of this accounting change, Peregrine began to record revenues as if it had fully completed the software sales process when it "sold" software to resellers, even though the resellers had no commitments from end users or had even identified end users interested in the product.

37.   Indeed, Peregrine recognized revenue on the improper sell-in method despite the existence of both oral and written agreements and side letters with resellers under which they had no obligation to pay Peregrine for software until it was sold-through to an end user. As demonstrated above, the practice of recognizing revenue on agreements where there was no fixed obligation to pay (i.e., sell-in method) was authorized by the full Board, including Defendant Watrous, and senior management, including defendant Farley.

38.   However, as detailed below, this change was not disclosed in the Merger Proxy/Prospectus received by Plaintiff in connection with the Harbinger merger. Instead, the Merger Proxy/Prospectus falsely and misleadingly represented that Peregrine followed the proper sell-through revenue recognition method for revenue from indirect licensing agreements that was consistent with GAAP. In fact, this material change in Peregrine's method of revenue recognition was never publicly disclosed.

## THE FALSE AND MISLEADING STATEMENTS

39.     The Merger could not be completed without the approval of a majority of

shareholders of Peregrine common stock present and voting at a special meeting and a majority

of the outstanding shares of Harbinger common stock. Accordingly, on or about May 22, 2000,

defendants issued the Registration Statement and Merger Proxy/Prospectus which, *inter alia*,

solicited Peregrine and Harbinger common shareholder votes, including Plaintiff's, to approve

the Merger.

40.     On May 22, 2000, Peregrine filed the Registration Statement with the SEC on

Form S-4/A that included the Merger Proxy/Prospectus, for special meetings on June 16, 2000.

The shareholders of Peregrine and Harbinger were each voting on the Merger.

41.     The Merger Proxy/Prospectus contained the following information, among other

data, concerning Peregrine's revenue. Under "Sales And Marketing," Peregrine stated:

> We sell our software and services in North America and internationally
> primarily through a direct sales force. A large number of our sales force is based
> at our San Diego headquarters, but we also have North American sales personnel
> located in, or in close proximity to, most major cities in the United States and
> Canada. Our international sales force is located in the metropolitan areas of
> Amsterdam, Frankfurt, London, Milan, Copenhagen, Munich, Paris, Singapore
> and Sydney. Our sales model combines telephone and Internet communications
> for product demonstrations with travel to customer locations to pursue a
> consultative sales process. In addition to our direct sales strategy, we continue to
> pursue indirect distribution channels. In the Pacific Rim and Latin America, we
> have established a network of channel partners. In North America, we have
> established a network of regional and national systems integrators and channel
> partners. When sold through direct channels, the sales cycle for our products
> typically ranges from six to nine months, depending on a number of factors,
> including the size of the transaction and the level of competition we encounter in
> our sales activities.

> In recent periods, we have devoted significant resources to building our
> marketing organization and infrastructure. We have significantly expanded
> product marketing, marketing communications, alliance marketing, telemarketing
> and sales training. The primary focus of our marketing department is to generate

qualified leads for the worldwide direct sales force and to create market awareness programs for Peregrine and our products. As part of our strategy, we have invested significantly in the Internet, developing a new corporate web site during fiscal 2000 and executing an array of web-based marketing programs. In addition, during fiscal 2000, we established an executive briefing center in order to focus our sales efforts at senior levels within our prospective customer's organizations.

We have significantly increased the size of our sales force over the last year and expect to continue hiring sales personnel, both domestically and internationally, over the next twelve months. Competition for qualified sales personnel is intense in the software industry. We also expect to increase the number of our regional, national, system integrator and channel partners, both domestically and internationally. Any failure to expand our direct sales force or other distribution channels could have a material adverse effect on our business, results of operations, and financial condition....

(underscoring added).

42.     Peregrine's Merger Proxy/Prospectus, in its "Selected Consolidated Financial

Data" section, reported, among other things, that for the fiscal year ended March 31, 2000

Peregrine had Total Revenues of $253,300,000 (Licenses Revenues were $168,467,000 and

Services Revenues were $84,833,000) and a Net Loss of $25,070,000.

43.     In Peregrine's "Management's Discussion And Analysis Of Financial Condition

And Results Of Operations" ("Merger Proxy/Prospectus MDA") which appears in the Merger

Proxy/Prospectus, Peregrine stated the following concerning revenue:

Our revenues are derived from product licensing and services. Services are comprised of maintenance, professional services, and training. License fees are generally due upon the granting of the license and typically include a one-year maintenance and warranty period as part of the license agreement. We also provide ongoing maintenance services, which include technical support and product enhancements, for an annual fee based upon the current price of the product.

Revenues from license agreements are recognized currently, provided that all of the following conditions are met:  a noncancelable license agreement has been signed, the product has been delivered, there are no material uncertainties regarding customer acceptance, collection of the resulting receivable is deemed probable, the risk of concession is deemed remote and no other significant vendor

obligations exist. Revenues from post-contract support services are recognized ratably over the term of the support period, which is generally one year. Maintenance revenues which are bundled with license agreements are unbundled using vendor-specific objective evidence. Consulting revenues are primarily related to implementation services most often performed on a time and material basis under separate service agreements for the installation of our products. Revenues from consulting and training services are recognized as the respective services are performed.

--------

REVENUES. Total revenues were $253.3 million, $138.1 million and $61.9 million for the fiscal years ended 2000, 1999 and 1998, representing period-to-period increases of 83% and 123% for the fiscal 2000 and 1999 periods....

LICENSES. License revenues were $168.4 million, $87.4 million and $38.8 million in fiscal 2000, 1999 and 1998, representing 67% of total revenues in fiscal 2000 and 63% in both fiscal 1999 and 1998. Total license revenues increased 93% and 125% period-to-period for fiscal 2000 and 1999. Domestic license revenues increased 73% in fiscal 2000 and 135% in fiscal 1999, while international license revenues increased 125% and 111% in fiscal 2000 and 1999. The increases in license revenues are attributable to increased demand for new and additional licenses of our infrastructure resource management applications, from new and existing customers, larger transaction sizes, expansion of our domestic and international sales forces, and acquisitions. We expect larger transaction sizes from a limited number of customers to account for a large percentage of license revenues for the foreseeable future. Management believes these trends will fluctuate period to period in absolute dollars and as a percentage of total revenues.

During the past three years, we have increased the number of channels that we use to distribute our products. The majority of our products are distributed through our direct sales organization. The balance is derived through indirect sales channels and alliance partners, including value added resellers and systems integrators. Revenues derived through indirect channels now comprise a significant portion of our total license revenues. We have substantially less ability to manage our sales through indirect channels and less visibility about our partner's success in selling the products that they have purchased from us. To the extent indirect sales continue to increase as a percentage of total revenues, we could experience unforeseen variability in our future revenues and operating results if our partners are unable to sell our products.

SERVICES. Services revenues consist of support, consulting and training services. Service revenues were $84.8 million, $50.7 million and $23.1 million for fiscal years 2000, 1999 and 1998, representing 33% of total revenues in fiscal

> 2000 and 37% in both fiscal 1999 and 1998. Total services revenues increased
> 67% and 120% period-to-period for fiscal 2000 and 1999. Domestic services
> increased 63% in fiscal 2000 and 111% in fiscal 1999, while international services
> revenues increased 78% and 140% in fiscal 2000 and 1999, respectively. The
> dollar increases are attributable to maintenance agreements and related billings
> from our expanded installed base of customers and an increase in consulting and
> training revenues related to the implementation of our software from initial
> license agreements and related expansion. While these revenues are increasing in
> absolute dollars, we expect these trends to fluctuate as a percentage of total
> revenues.

(underscoring added)

44.     Peregrine's financial statements for the fiscal year ended March 31, 2000 and

1999 ("Merger Proxy/Prospectus Financials") are included in the Merger Proxy/Prospectus.

Defendant Andersen, Peregrine's Independent Accountants, issued an unqualified opinion on

these financial statements. The financial statements included Peregrine's "Consolidated

Statements Of Operations" for the fiscal year ended March 31, 2000 which reported that

Peregrine had Total Revenues of $253,300,000 (Licenses Revenues were $168,467,000 and

Services Revenues were $84,833,000) and a Net Loss of $25,070,000 for that fiscal year. For the

fiscal year ended March 31, 1999 Peregrine reported Total Revenues of $138,063,000 (License

Revenues were $87,362,000 and Service Revenues were $50,701,000) and a Net Loss of

$23,370,000 for that fiscal year.

45.     The Merger Proxy/Prospectus Financials had "Notes To Consolidated Financial

Statements" which included the following under the caption:  Company Operations And

Summary Of Significant Accounting Policies

REVENUE RECOGNITION

> We generate revenues from licensing the rights to use our software
> products primarily to end users. We also generate revenues from post-contract
> support (maintenance), consulting and training services performed for customers

who license our products.  We do not provide professional services unrelated to our products.

Revenues from direct and indirect license agreements are recognized currently, provided that all of the following conditions are met: a non-cancelable license agreement has been signed, the product has been delivered, there are no material uncertainties regarding customer acceptance, collection of the resulting receivable is deemed probable, risk of concession is deemed remote, and we have no other significant obligations associated with the transaction.  Revenues from post-contract support services are recognized ratably over the term of the maintenance period, generally one year.  Maintenance revenues which are bundled with license agreements, are unbundled using vendor specific objective evidence.  Professional services revenues are primarily related to implementation services most often performed on a time and material basis under separate service agreements for the installation of our products.  Revenues from professional services and customer training are recognized as the respective services are performed.

Cost of license revenues consists primarily of amounts paid to third-party vendors, product media, manuals, packaging materials, personnel, and related shipping costs.  Cost of maintenance and services revenues consists primarily of salaries, benefits, and allocated overhead costs incurred in providing telephone support, professional services, and training to customers.

Deferred revenues primarily relates to maintenance fees, which have been paid by our customers in advance of the performance of these services.

Quarterly Information ( Unaudited )
The following unaudited quarterly financial information includes, in our opinion, all normal and recurring adjustments (in thousands) necessary to fairly

state our consolidated results of operations and related information for the periods
presented.

| | FIRST QUARTER | SECOND QUARTER | THIRD QUARTER | FOURTH QUARTER |
|---|---|---|---|---|
| **FISCAL 2000** | | | | |
| Licenses revenues ............... | $ 32,092 | $ 37,102 | $ 46,524 | $ 52,749 |
| Services revenues ................ | 19,513 | 20705 | 21,020 | 23,595 |
| Total costs and expenses ......... | -53093 | (56,006) | -63233 | -89624 |
| Income (loss) from operations ..... | (1,488) | 1,801 | 4311 | (13,280) |
| Interest income (expense) and other ........................ | 86 | 7 | 5 | (60) |
| Income tax expense ............. | 3439 | 4042 | 4183 | 4788 |
| Net income (loss) ............... | $ (4,841) | $ (2,234) | $   133 | $(18,128) |

......................................................................

46.    On June 16, 2000, Peregrine completed the acquisition of Harbinger Corporation.

Peregrine issued approximately 30,157,000 shares of Peregrine Common Stock (excluding

approximately 6.0 million shares of Peregrine common stock issuable upon exercise of options

and warrants assumed in connection with the acquisition) in exchange for all of the outstanding

shares of Harbinger for a total purchase price, including merger related costs, of approximately

$1,481.4 million.


**THE MATERIAL FALSE AND MISLEADING STATEMENTS EMERGE**

47.    As noted above, the change to the improper sell-through method of revenue

recognition was not disclosed in the Merger Proxy/Prospectus received by Plaintiff in connection

with the Harbinger merger. Instead, the Merger Proxy/Prospectus falsely and misleadingly

represented that Peregrine followed the proper sell-through revenue recognition method for

revenue from indirect licensing agreements that was consistent with GAAP. In fact, this material

change in Peregrine's method of revenue recognition was never publicly disclosed.

48.     In February 2002, Peregrine announced it had replaced Arthur Andersen with a new independent outside auditor - KPMG LLP.

49.     On May 6, 2002, Peregrine announced that KPMG uncovered potential accounting inaccuracies that at that time questioned at least $100 million in revenue for fiscal years 2001 and 2002.  According to the Company, the revenue that was being questioned was from "indirect channels," meaning that it came via third-party partners that were selling Peregrine's products to the end user.  Furthermore, Peregrine said it "currently" recognized revenue from "indirect channels" on the above mentioned "sell through" basis, and thus revenue was recognized at the time the software was sold to the end user.

50.     However, Peregrine finally disclosed May 6, 2002 that, to recognize revenue from "indirect channels," it had "previously" used the "sell in" basis

51.     In "indirect channels" transactions,  Peregrine knowingly recognized revenue from software licensing deals with resellers despite the fact that one or more conditions for proper recognition of revenue under GAAP and its own stated policy were never met, including the following: (i) the fee owed to Peregrine was not fixed and determinable, (ii) collectability of the fee was not probable, or (iii) the reseller's obligation to pay for the product was contingent upon subsequent sale of the product to an end user.  In addition, Peregrine provided certain resellers with side payments, deep discounts and rebates to induce them into "purchasing" license agreements where no end user had committed to purchase the product.

52.     At the same time, the Company announced that it had replaced Steve Gardner, its Chairman and Chief Executive Officer, and Matthew Gless, its Chief Financial Officer.

53.     As a result of these announcements, Peregrine's stock fell on May 6, 2002 from $1.68 to $.89, down from a 52 week high of $33.55 in the NASDAQ.

31394110.WPD                                    21

54.    On May 23, 2002, Peregrine admitted that its fiscal year 2000 financial statements

had to be restated and that it would also restate results for fiscal year 2001 and the first three

quarters of 2002.  In addition, Peregrine announced that the SEC had begun an investigation into

its accounting practices.

55.    On June 3, 2002 Peregrine filed with the SEC a Form 8-K in which it admitted

> [r]evenue recognition irregularities, principally arising in the
> Company's indirect channel sales and, to a lesser extent, arising in
> connection with commercial transactions involving
> contemporaneous product purchase activities and investments or
> acquisitions. KPMG has advised that correcting these irregularities
> would have the effect generally of delaying to later periods, or
> nullifying revenue recognized from product sales.

56.    On June 30, 2003, the SEC filed a complaint against Peregrine in the United

States District Court for the Southern District of California.  In relevant part, the SEC complaint

alleged as follows:

> This case involves a massive financial fraud by defendant
> Peregrine Systems, Inc., a publicly traded San Diego-based
> software company.  The purpose of the fraud was to inflate
> Peregrine's revenue and stock price.  To achieve its unlawful
> purpose, Peregrine filed materially incorrect financial statements
> with the Commission for 11 consecutive quarters between April 1,
> 1999 and December 31, 2001 . . . In February 2003, Peregrine
> restated its financial results for its fiscal years 2000 and 2001, and
> for the first three quarter of fiscal 2002.  Peregrine reduced
> previously reported revenue of $1.34 billion by $509 million . . ..

57.    On July 22, 2003, Peregrine consented to entry of a Final Judgment in the SEC

action against it.  Among other things, the Final Judgment (i) permanently enjoined Peregrine

and related persons from violating the antifraud provisions of the federal securities laws; (ii)

required the Company to retain an Internal Auditor acceptable to the SEC who is required to

report directly to the Audit Committee of Peregrine's Board of Directors, and to assess and

enforce Peregrine's accounting control structure and to ensure that Peregrine's financial condition and results are accurately reported in Peregrine's public financial statements; (iii) required Peregrine to establish a Corporate Compliance Program and appoint a Corporate Compliance Office acceptable to the SEC whose duties include assessing and reporting on Peregrine's compliance with recognized standards of "best practices" with respect to corporate governance and to ensure that Peregrine's Board of Directors (and its committees) have appropriate powers, structure, composition and resources; and (iv) required Peregrine to commence a training and education program for its officers and employees, to prevent violations of the federal securities laws.

58.    On February 28, 2003, Peregrine filed with the SEC restated financial results for its fiscal years 2000 and 2001, and the first three (3) reporting quarters of fiscal year 2002. By these restatements the Company admitted that it had improperly recognized over $500 million in revenue during the restated periods. These restatements are also an admission that each document publishing the originally announced financial results for the restated periods contained untrue statements of material fact. Thus, Peregrine has admitted that each of the press releases and the annual quarterly reports filed on SEC forms 10-K and 10-Q and all other SEC filings incorporating or including such financial information, for the periods ending June 30, 1999 through and including December 31, 2001, contained untrue statements of material fact. The devastating impact of the accounting restatement is reflected by a comparison of the originally reported results with actual results, as set forth below.

**Fiscal Year Ended March 31, 2000**

| Income Statement | As Reported | Restatement Adjustment | Restated Amount |
|---|---|---|---|
| Revenue | $253,300,000 | ($121,668,000) | $131,632,000 |

| Income Statement | As Reported | Restatement Adjustment | Restated Amount |
|---|---|---|---|
| Net Loss | ($25,070,000) | ($192,348,000) | ($217,418,000) |

| Cash Flow Statement | As Reported | Restatement Adjustment | Restated Amount |
|---|---|---|---|
| Cash Flow Provided By Operations | $57,611,000 | ($92,373,000) | ($34,762,000) |
| Advances From Factored Receivables | ----- | ($90,885,000) | ($90,885,000) |

59.     The above statements and omissions were material.  A reasonably prudent investor would have wanted to know the truth and the omitted facts in deciding whether to vote to approve the merger of Harbinger and Peregrine.  The truth and the omitted facts bore directly on Peregrine's financial condition, status and prospects and thus on the value of Peregrine's shares.

## DEFENDANTS' CONCEALMENT OF WRONGDOING

60.     Defendants actively concealed their wrongdoing such that no reasonable investor would have been put on inquiry or actual notice of such  wrongdoing until, at the earliest, May 6, 2002, when Peregrine announced the resignations of President and CEO Stephen Gardner and Chief Financial Officer Matthew Gless, and the commencement of an investigation into potential accounting irregularities.

## COUNT I

### Against the Individual Defendants
### For Violations Of Section 11 Of The Securities Act

61.     Plaintiff repeats and realleges each of the allegations set forth in the foregoing

paragraphs, as if fully set forth herein. This Count is asserted against the Individual Defendants

for violations of Section 11 of the Securities Act, 15 U.S.C. § 77k.

62.     On or about May 22, 2000, the individual defendants caused the issuance, and/or

signed Amendment 1 to its Form S-4/A Registration Statement that was filed with the SEC in

connection with Peregrine's acquisition of Harbinger.  This Registration Statement included a

Proxy/Prospectus, which provided for, inter alia, special meetings to be held on June 16, 2000 in

which shareholders of both Peregrine and Harbinger were solicited to vote to approve the merger

of the two companies.  Under the terms of the merger, each outstanding share of Harbinger stock

would be exchanged for 0.75 of a share of Peregrine common stock, and each option to purchase

Harbinger would be exchanged for an option to purchase Peregrine common stock at the same

exchange ratio.

63.     The Registration Statement and Merger Proxy/Prospectus, and those documents

and disclosures incorporated therein by reference, were materially false and misleading;

contained untrue statements of material facts, omitted to state material facts necessary to make

the statements made in the Registration Statement and Merger Proxy/Prospectus, under the

circumstances in which they were made, not misleading; and/or failed to adequately disclose

material facts. As detailed herein, the misrepresentations contained in, or the material facts

omitted from, the Registration Statement and Merger Proxy Prospectus included, but were not

limited to, the overstatement of Peregrine's revenues its fiscal year ended March 31, 2000.  For

fiscal year 2000, Peregrine's financial statements have been restated by over $300 million. This information was material to Plaintiff in considering how to vote on the Merger, including whether the Exchange Ratio accurately reflected the value of Peregrine common stock.

64.     The Individual Defendants were responsible for the contents of the Registration Statement and Merger Proxy/Prospectus and caused their filings with the SEC.

65.     The Individual Defendants signed the Registration Statement, consented to being named therein as directors and/or officers of Peregrine, and caused it to be prepared, filed with the SEC and circulated to shareholders of Harbinger, including Plaintiff in New Jersey.

66.     Plaintiff acquired Peregrine common stock issued pursuant to the Registration Statement and Merger Proxy/Prospectus.

67.     At the time Plaintiff acquired Peregrine's common stock pursuant to the Registration Statement and Merger Proxy/Prospectus, Plaintiff did not know, nor by the exercise of reasonable care could have known, of the facts concerning the material misstatements and/or omissions alleged herein.

68.     Defendants' false statements, misrepresentations and omissions caused the market price of Peregrine securities to be artificially inflated at the time of the merger with Harbinger. On June 16, 2000, the date of the merger with Harbinger, the market price of Peregrine common stock closed at $25.56 per share.

69.     This action was brought within one year after the discovery of the untrue statements and/or omissions, and within three years after the Peregrine common stock was acquired in connection with the Merger pursuant to class action tolling of the statute of limitations

70. By reason of the foregoing, the Individual Defendants violated Section 11 of the Securities Act and are liable to Plaintiff, who has been damaged by reason of such violation, the amount of which will be determined at trial.

## COUNT II

### Against Arthur Andersen, LLP For
### Violations of Section 11 of the Securities Act

71. Plaintiff repeats and realleges each of the allegations set forth in the foregoing paragraphs, as if fully set forth herein. This Count is asserted against Andersen for violations of Section 11 of the Securities Act, 15 U.S.C. § 77k.

72. The Registration Statement and Merger Proxy/Prospectus, and those documents and disclosures incorporated by reference therein, were materially false and misleading; contained untrue statements of material facts, omitted to state material facts necessary to make the statements made in the Registration Statement and Merger Proxy/Prospectus, under the circumstances in which they were made, not misleading; and/or failed to adequately disclose material facts. As detailed herein, the misrepresentations contained in, or the material facts omitted from, the Registration Statement and Merger Proxy Prospectus included, but were not limited to the overstatement of Peregrine's revenues for the fiscal year ended March 31, 2000. For fiscal year 2000, Peregrine's financial statements have been restated by over $300 million. This information was material to Plaintiff in considering how to vote on the Merger, including whether the Exchange Ratio accurately reflected the value of Peregrine common stock.

73. Andersen prepared and/or certified a report or valuation used in connection with the Registration Statement, as defined in Section 11 of the Securities Act, 15 U.S.C. § 77k(a)(4).

31394110.WPD

27

74.     Arthur Anderson had a duty to make a reasonable and diligent investigation of the truthfulness and accuracy of the Peregrine financial statements contained in the Harbinger Registration Statement.  They had a duty to ensure such statements were true and there were no omissions of material facts that would make the statements misleading.  Arthur Andersen failed to do so.  Instead, Arthur Andersen consented to the inclusion of its materially false and misleading audit report on Peregrine's fiscal year 2000 financial statements.  Arthur Andersen audit report contained in the Peregrine registration statement with the knowledge and consent of Arthur Andersen.

75.     Andersen, as a preparer or certifier of a report or valuation used in the Registration Statement, is liable to Plaintiff due to his exchange of  Harbinger common stock for Peregrine common stock in connection with the Merger and pursuant to the Registration Statement and Merger Proxy/Prospectus.

76.     Plaintiff acquired Peregrine common stock issued pursuant to the Registration Statement and Merger/Prospectus.

77.     At the time Plaintiff acquired Peregrine's common stock pursuant to the Registration Statement and Merger Proxy/Prospectus, Plaintiff did not know, nor by the exercise of reasonable care could have known, of the material misstatements and/or omissions alleged herein.

78.     This action was brought within one year after the discovery of the untrue statements and/or omissions and within three years after the Peregrine common stock was acquired in connection with the Merger pursuant to class action tolling of the statute of limitations.

79.     By reason of the foregoing, Andersen violated Section 11 of the Securities Act and is liable to Plaintiff, who has been damaged by reason of such violation, the amount of which will be determined at trial.  Defendant Andersen is liable for its violations of Section 11 of the Securities Act under applicable principles of corporate law.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants, and each of them, as follows:

A.     Declaring and determining that the Defendants violated the federal securities laws by reason of their conduct alleged herein;

B.     Awarding monetary damages against all of the Defendants, jointly and severally, in favor of Plaintiff for the damages suffered as a result of the wrongdoing complained of herein, together with prejudgment interest from the date of the wrongdoing to the date of the entry of judgment;

C.     Awarding Plaintiff his costs, expenses, and disbursements incurred in this action, including reasonable attorneys' and experts' fees and costs;

D.     Granting equitable and/or injunctive relief as permitted by law, equity and federal statutory provisions sued on herein, including attaching, impounding, imposing a constructive trust upon or otherwise restricting Defendants' assets so as to assure Plaintiff of an effective remedy, and;

E.     Awarding Plaintiff such other relief as the Court may deem just and proper.

### JURY DEMAND

Plaintiff hereby demands a trial by jury.

31394110.WPD

DATED: January ͻ ͻ, 2007


_____
Lori B. Leskin (LL 7115)
**KAYE SCHOLER LLP**
425 Park Avenue
New York, NY 10022
Telephone: (212) 836-8000
Facsimile: (212) 836-8689


Of Counsel:
Allan M. Pepper
**KAYE SCHOLER LLP**
425 PARK AVE
New York, NY 10022
Telephone: (212) 836-8000
Facsimile: (212) 836-8689

*Attorneys for Plaintiff*

**Before the Judicial Panel on Multidistrict Litigation**

MDL - _____ In re Peregrine Systems, Inc. Securities Litigation

### SCHEDULE OF ACTIONS

| Case Captions | Court | Civil Action No. | Judge |
|---|---|---|---|
| **Plaintiffs:** Alan Marshall, on Behalf of Himself and All Others Similarly Situated **Defendants:** Peregrine Systems, Inc., John J. Moores, Steve Gardner, Matt Glass, and Christopher Cole | S.D. California | 3:02-cv-00870-BEN-RBB | Roger T. Benitez |
| **Plaintiffs:** Richard Bowe, Individually and on behalf of all others similarly situated **Defendants:** Peregrine Systems, Inc., Stephen P. Gardner, and Matthew C. Gless | S.D. California | 3:02-cv-00871-BEN-RBB (Consolidated with 3:02-cv-00870-BEN-RBB) | Roger T. Benitez |
| **Plaintiffs:** Joel A. Gerber, individually and on behalf of all others similarly situated **Defendants:** Peregrine Systems, Inc., Stephen P. Gardner, and Matthew C. Gless | S.D. California | 3:02-cv-00882-BEN-RBB (Consolidated with 3:02-cv-00870-BEN-RBB) | Roger T. Benitez |
| **Plaintiffs:** Peter Ahrens, on Behalf of Himself and All Others Similarly Situated **Defendants:** Peregrine Systems, Inc., Stephen P. Gardner, Matthew C. Gless, and Andersen LLP | S.D. California | 3:02-cv-00885-BEN-RBB (Consolidated with 3:02-cv-00870-BEN-RBB) | Roger T. Benitez |
| **Plaintiffs:** Blake Halberg, on behalf of himself and all others similarly situated **Defendants:** Peregrine Systems, Inc., Matthew C. Gless, and Stephen P. Gardner | S.D. California | 3:02-cv-00886-BEN-RBB (Consolidated with 3:02-cv-00870-BEN-RBB) | Roger T. Benitez |
| **Plaintiffs:** Chris Martin, Individually And On Behalf of All Others Similarly Situated **Defendants:** Peregrine Systems, Inc., Arthur Andersen, LLP, Stephen Gardner, and Matthew Gless | S.D. California | 3:02-cv-00887-BEN-RBB (Consolidated with 3:02-cv-00870-BEN-RBB) | Roger T. Benitez |

| Plaintiffs:<br>Ira Gaines, on behalf of himself and all others similarly situated<br>Defendants:<br>Peregrine Systems, Inc., Stephen P. Gardner, and Matthew C. Gless | S.D. California | 3:02-cv-00890-BEN-RBB (Consolidated with 3:02-cv-00870-BEN-RBB) | Roger T. Benitez |
|---|---|---|---|
| Plaintiffs:<br>Jeff Michon and Peter Chervin, on Behalf of Themselves and All Others Similarly Situated<br>Defendants:<br>Peregrine Systems, Inc., Stephen P. Gardner, Matthew C. Gless, and John J. Moores | S.D. California | 3:02-cv-00891-BEN-RBB (Consolidated with 3:02-cv-00870-BEN-RBB) | Roger T. Benitez |
| Plaintiffs:<br>Peter J. Krinsky, on Behalf of Himself, and all Others Similarly Situated<br>Defendants:<br>Peregrine Systems, Inc., Stephen P. Gardner, and Matthew C. Gless | S.D. California | 3:02-cv-00902-BEN-RBB (Consolidated with 3:02-cv-00870-BEN-RBB) | Roger T. Benitez |
| Plaintiffs:<br>Jonathan D. Layes, Individually and on Behalf of All Others Similarly Situated<br>Defendants:<br>Peregrine Systems, Inc., Stephen P. Gardner, and Matthew C. Gless | S.D. California | 3:02-cv-00906-BEN-RBB (Consolidated with 3:02-cv-00870-BEN-RBB) | Roger T. Benitez |
| Plaintiffs:<br>Alan Berkowitz, individually and on behalf of all others similarly situated<br>Defendants:<br>Peregrine Systems, Inc., Steve Gardner, and Matthew Gless | S.D. California | 3:02-cv-00921-BEN-RBB (Consolidated with 3:02-cv-00870-BEN-RBB) | Roger T. Benitez |
| Plaintiffs:<br>Mendel Spiegel and Richard Ruskin, on Behalf of Themselves and All Others Similarly Situated<br>Defendants:<br>Peregrine Systems, Inc., Stephen P. Gardner, Matthew C. Gless, and Arthur Andersen LLP | S.D. California | 3:02-cv-000926-BEN-RBB (Consolidated with 3:02-cv-00870-BEN-RBB) | Roger T. Benitez |

| | | | |
|---|---|---|---|
| **Plaintiffs:**<br>Gabriel West, Individually and on behalf of all others similarly situated<br>**Defendants:**<br>Peregrine Systems, Inc., Stephen P. Gardner, and Matthew C. Gless | S.D. California | 3:02-cv-00951-BEN-RBB (Consolidated with 3:02-cv-00870-BEN-RBB) | Roger T. Benitez |
| **Plaintiffs:**<br>Randy Lee, on Behalf of Himself and all Others Similarly Situated<br>**Defendants:**<br>Peregrine Systems, Inc., Arthur Andersen LLP, Stephen P. Gardner, and Matthew C. Gless | S.D. California | 3:02-cv-00979-BEN-RBB (Consolidated with 3:02-cv-00870-BEN-RBB) | Roger T. Benitez |
| **Plaintiffs:**<br>Henry Frankel, on behalf of himself and all others similarly situated<br>**Defendants:**<br>Peregrine Systems, Inc., Stephen P. Gardner, and Matthew C. Gless | S.D. California | 3:02-cv-00996-BEN-RBB (Consolidated with 3:02-cv-00870-BEN-RBB) | Roger T. Benitez |
| **Plaintiffs:**<br>Richard Schleicher, Individually and on behalf of all others similarly situated<br>**Defendants:**<br>Peregrine Systems, Inc., Stephen P. Gardner, and Matthew C. Gless | S.D. California | 3:02-cv-01002-BEN-RBB (Consolidated with 3:02-cv-00870-BEN-RBB) | Roger T. Benitez |
| **Plaintiffs:**<br>Anthony Boarman, on Behalf of Himself and All Others Similarly Situated<br>**Defendants:**<br>Peregrine Systems, Inc., John J. Moores, Stephen P. Gardner, and Matthew C. Gless | S.D. California | 3:02-cv-01010-BEN-RBB (Consolidated with 3:02-cv-00870-BEN-RBB) | Roger T. Benitez |
| **Plaintiffs:**<br>Eric P. Daniels, on Behalf of Himself and All Others Similarly Situated<br>**Defendants:**<br>Peregrine Systems, Inc., John J. Moores, Stephen P. Gardner, and Matthew C. Gless | S.D. California | 3:02-cv-01011-BEN-RBB (Consolidated with 3:02-cv-00870-BEN-RBB) | Roger T. Benitez |

| | | | |
|---|---|---|---|
| **Plaintiffs:** Donna Murray, on Behalf of Herself and All Others Similarly Situated **Defendants:** Peregrine Systems, Inc., John J. Moores, Stephen P. Gardner, and Matthew C. Gless | S.D. California | 3:02-cv-01022-BEN-RBB (Consolidated with 3:02-cv-00870-BEN-RBB) | Roger T. Benitez |
| **Plaintiffs:** Stephan Anish, on Behalf of Himself and All Others Similarly Situated **Defendants:** Peregrine Systems, Inc., Stephen P. Gardner, Matthew C. Gless, and Arthur Andersen LLP | S.D. California | 3:02-cv-01047-BEN-RBB (Consolidated with 3:02-cv-00870-BEN-RBB) | Roger T. Benitez |
| **Plaintiffs:** Robert Renzi, Individually and on behalf of all others similarly situated **Defendants:** Peregrine Systems, Inc., Stephen P. Gardner, and Matthew C. Gless | S.D. California | 3:02-cv-01060-BEN-RBB (Consolidated with 3:02-cv-00870-BEN-RBB) | Roger T. Benitez |
| **Plaintiffs:** Craig McCarthy, Individually and on behalf of all others similarly situated **Defendants:** Peregrine Systems, Inc., Stephen P. Gardner, and Matthew C. Gless | S.D. California | 3:02-cv-01061-BEN-RBB (Consolidated with 3:02-cv-00870-BEN-RBB) | Roger T. Benitez |
| **Plaintiffs:** Stoneridge Investment Partners LLC, On Behalf of Itself and all Others Similarly Situated **Defendants:** Peregrine Systems, Inc., Stephen P. Gardner, Matthew C. Gless, and Arthur Andersen LLP | S.D. California | 3:02-cv-01073-BEN-RBB (Consolidated with 3:02-cv-00870-BEN-RBB) | Roger T. Benitez |
| **Plaintiffs:** Heywood Waga, on Behalf of Himself and All Others Similarly Situated **Defendants:** Peregrine Systems, Inc., Stephen P. Gardner, David A. Farley, John J. Moores, Christopher A. Cole, Richard A. Hosley II, Charles E. Noell III, Norris Van Den Berg, Thomas G. Watrous, Sr., Matthew C. Gless, and Arthur Andersen, LLP | S.D. California | 3:02-cv-01095-BEN-RBB (Consolidated with 3:02-cv-00870-BEN-RBB) | Roger T. Benitez |

| | | | |
|---|---|---|---|
| **Plaintiffs:**<br>Michael J. Farrell, individually and on behalf of all others similarly situated<br>**Defendants:**<br>Peregrine Systems, Inc., Stephen P. Gardner, Matthew C. Gless, and Arthur Andersen LLP | S.D. California | 3:02-cv-01120-BEN-RBB (Consolidated with 3:02-cv-00870-BEN-RBB) | Roger T. Benitez |
| **Plaintiffs:**<br>Mateo Camarillo and Beverlee Jolly, individually and on behalf of all others similarly situated<br>**Defendants:**<br>Peregrine Systems, Inc., John J. Moores, Stephen P. Gardner, Charles E. Noell III, Matthew C. Gless, JMI Equity Fund L.P., JMI Services Inc., and Arthur Andersen | S.D. California | 3:02-cv-01168-BEN-RBB (Consolidated with 3:02-cv-00870-BEN-RBB) | Roger T. Benitez |
| **Plaintiffs:**<br>Congregation Bais Avrohom, on behalf of itself and on behalf of all others similarly situated<br>**Defendants:**<br>Peregrine Systems, Inc., Stephen P. Gardner, and Matthew C. Gless | S.D. California | 3:02-cv-01174-BEN-RBB (Consolidated with 3:02-cv-00870-BEN-RBB) | Roger T. Benitez |
| **Plaintiffs:**<br>Katy Cox Johnson, Individually and on behalf of all others similarly situated<br>**Defendants:**<br>Peregrine Systems, Inc., Stephen P. Gardner, Matthew C. Gless, John J. Moores, Christopher A. Cole, Richard A. Hosley II, Charles A. Noell III, Norris Van Den Berg, Thomas G. Watrous, Sr., and Arthur Anderson LLP | S.D. California | 3:02-cv-01176-BEN-RBB (Consolidated with 3:02-cv-00870-BEN-RBB) | Roger T. Benitez |
| **Plaintiffs:**<br>Alan Hylton, Individually and on behalf of all others similarly situated<br>**Defendants:**<br>Peregrine Systems, Inc., Stephen P. Gardner, Matthew C. Gless, John J. Moores, Christopher A. Cole, Charles A. Noell III, William D. Savoy, Thomas G. Watrous, Sr., William B. Richardson, Rod Dammeyer, and Arthur Anderson LLP | S.D. California | 3:02-cv-01207-BEN-RBB (Consolidated with 3:02-cv-00870-BEN-RBB) | Roger T. Benitez |

| Plaintiffs:<br>Janet Kusmierski and Greg Singer,<br>Individually and on behalf of all others<br>similarly situated<br>Defendants:<br>Peregrine Systems, Inc., Stephen A.<br>Gardner, and Matthew C. Gless | S.D.<br>California | 3:02-cv-01208-<br>BEN-RBB<br>(Consolidated with<br>3:02-cv-00870-<br>BEN-RBB) | Roger T. Benitez |
|---|---|---|---|
| Plaintiffs:<br>Michele Voth, Victoria Jibaja Miller and<br>Marijo A. Clemons, individually and on<br>behalf of all present and former<br>Employees of Peregrine Systems Inc.,<br>who participated in the Employee Stock<br>Purchase Plan similarly situated<br>Defendants:<br>Peregrine Systems, Inc., John J. Moores,<br>Stephen P. Gardner, Charles E. Noell III,<br>Matthew C. Gless, JMI Equity Fund L.P.,<br>JMI Services Inc., and Arthur Andersen | S.D.<br>California | 3:02-cv-01238-<br>BEN-RBB<br>(Consolidated with<br>3:02-cv-00870-<br>BEN-RBB) | Roger T. Benitez |
| Plaintiffs:<br>Blair Alexander, individually and on<br>behalf of himself and all others similarly<br>situated<br>Defendants:<br>Matthew C. Gless, Stephen P. Gardner,<br>and Peregrine Systems, Inc. | S.D.<br>California | 3:02-cv-01242-<br>BEN-RBB<br>(Consolidated with<br>3:02-cv-00870-<br>BEN-RBB) | Roger T. Benitez |
| Plaintiffs:<br>Felix Lecocq, on behalf of himself and all<br>others similarly situated<br>Defendants:<br>Peregrine Systems, Inc., Stephen P.<br>Gardner, Matthew C. Gless and Arthur<br>Andersen, LLP | S.D.<br>California | 3:02-cv-02550-<br>BEN-RBB<br>(Consolidated with<br>3:02-cv-00870-<br>BEN-RBB) | Roger T. Benitez |
| Plaintiffs:<br>William V. Alesi, on behalf of himself<br>and all others similarly situated<br>Defendants:<br>Matthew C. Gless, and Stephen P.<br>Gardner | S.D.<br>California | 3:02-cv-00057-<br>BEN-RBB<br>(Consolidated with<br>3:02-cv-00870-<br>BEN-RBB) | Roger T. Benitez |

| | | | |
|---|---|---|---|
| **Plaintiffs:**<br>David Hildes, Individually and as Trustee of the The David and Kathleen Hildes 1999 Charitable Remainder Unitrust Dated June 25, 1999<br>**Defendants:**<br>Arthur Andersen, LLP, Thomas G. Watrous, Sr. and John Doe as the Executor of the Estate of David A. Farley | District of New Jersey | 2:07-cv-00393-SRC-CCC | Stanley R. Chesler |

## BEFORE THE JUDICIAL PANEL ON
## MULTIDISTRICT LITIGATION

**In re** Peregrine Systems, Inc. Sec. Litig.          MDL - _____

### Proof of Service

I hereby certify that a copy of the below entitled Motion, Brief, Schedule of Actions and this Certificate of Service was served by First Class Mail on July 19, 2007 to the parties listed on the attached service list.

JOINT MOTION FOR TRANSFER OF ACTION TO THE SOUTHERN DISTRICT OF CALIFORNIA UNDER 28 U.S.C. § 1407 FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS;

BRIEF IN SUPPORT OF JOINT MOTION FOR TRANSFER OF ACTION UNDER 28 U.S.C. § 1407;

SCHEDULE OF ACTIONS; and

PROOF OF SERVICE

### [PLEASE SEE ATTACHED SERVICE LIST]

I declare under penalty of perjury under the laws of the State of California and of the United States that the above is true and correct.

Executed on July 19, 2007, at Santa Monica, California.

_____
Cheryle Appling

## Service List To Proof of Service For Motion and Brief
## Before The Judicial Panel on Multidistrict Litigation

**Plaintiff**
**Alan Marshall**
*on behalf of himself and all others similarly*
*situated*

represented by **James M. Finberg**
Lieff Cabraser Heimann and Bernstein
275 Battery Street
30th Floor
San Francisco, CA 94111-3339
(415) 956-1000
Fax: (415) 956-1008

**Jeffrey R. Krinsk**
Finkelstein and Krinsk
501 West Broadway
Suite 1250
San Diego, CA 92101-3593
(619) 238-1333
Fax: (619) 238-5425
Email: jrk@classactionlaw.com

**Plaintiff**
**Richard Bowe**

represented by **James A. Caputo**
Lerach Coughlin Stoia Geller Rudman and
Robbins
655 West Broadway
Suite 1900
San Diego, CA 92101
(619) 231-1058
Fax: (619) 231-7423
Email: jimc@lerachlaw.com

**Plaintiff**
**Joel A. Gerber**

represented by **Lionel Z. Glancy**
Glancy Binkow and Goldberg
1801 Avenue of the Stars
Suite 311
Los Angeles, CA 90067
(310) 201-9150
Fax: (310) 201-9160
Email: info@glancylaw.com

**Plaintiff**
**Peter Ahrens**

represented by **Leigh A. Parker**
Weiss and Lurie
10940 Wilshire Boulevard
24th Floor
Los Angeles, CA 90024
(310) 208-2800
Email: 1parker@weisslurie.com

**Plaintiff**
**Blake Halberg**

represented by **Nicole Lavallee**
Berman DeValerio Pease Tabacco Burt
Pucillo
425 California Street
Suite 2100
San Francisco, CA 94104
(415) 433-3200
Fax: (415) 433-6382
Email: nlavallee@bermanesq.com

**Plaintiff**
**Chris Martin**

represented by **Thomas Dominic Mauriello**
Law Offices of Thomas D. Mauriello
501 North El Camino Real
Suite 200
San Clemente, CA 92672-4789
(949) 366-4135
Email: tomm@maurlaw.com

**Plaintiff**
**Ira Gaines**

represented by **Francis Michael Gregorek**
Wolf Haldenstein Adler Freeman and Herz
750 B Street
Symphony Towers Suite 2770
San Diego, CA 92101-5050
(619) 239-4599
Fax: (619) 234-4599
Email: gregorek@whafh.com

**Plaintiff**
**Jeff Michon**

represented by **Jeffrey R. Krinsk**
(See above for address)
*TERMINATED: 10/11/2002*

SERVICE LIST
PAGE 2

**Stephen Oestreich**
Entwistle and Cappucci
280 Park Avenue
New York, NY 10017-1216
(212) 894-7200
Fax: (212) 894-7272

**Plaintiff**
**Peter Chervin**

represented by **Jeffrey R. Krinsk**
(See above for address)
*TERMINATED: 10/11/2002*

**Stephen Oestreich**
(See above for address)

**Plaintiff**
**Peter J. Krinsky**

represented by **James A. Caputo**
(See above for address)

**Plaintiff**
**Jonathan D. Layes**

represented by **Juden Justice Reed**
Schubert and Reed
3 Embarcadero Center
Suite 1650
San Francisco, CA 94111-4003
(415) 788-4220

**Plaintiff**
**Alan Berkowitz**

represented by **Patrick Nathaniel Keegan**
Keegan and Baker
4370 La Jolla Village Drive
Suite 640
San Diego, CA 92122
(858) 552-6750
Email: pkeegan@kmb-law.com

**Plaintiff**
**Mendel Spiegel**

represented by **Leigh A. Parker**
(See above for address)

SERVICE LIST
PAGE 3

**Plaintiff**
**Richard Ruskin**

represented by **Leigh A. Parker**
(See above for address)

**Plaintiff**
**Gabriel West**

represented by **James A. Caputo**
(See above for address)

**Plaintiff**
**Randy Lee**

represented by **Lori E. Sambol Brody**
Kaplan Fox Kilsheimer
1801 Century Park East
Suite 1460
Los Angeles, CA 90067
(310) 785-0800
Email: lbrody@kaplanfox.com

**Plaintiff**
**Henry Frankel**

represented by **Francis Michael Gregorek**
(See above for address)

**Plaintiff**
**Richard Schleicher**

represented by **James A. Caputo**
(See above for address)

**Steven J. Toll**
Cohen Milstein Hausfeld & Toll
1100 New York Ave NW
West Tower Suite 500
Washington, DC 20005-3955
(202) 408-4600
Fax: (202) 408-4699
Email: stoll@cmht.com

**Plaintiff**
**Anthony Boarman**

represented by **Jeffrey R. Krinsk**
(See above for address)

SERVICE LIST
PAGE 4

DOCS/931581.1

**Plaintiff**
**Eric P. Daniels**

represented by **Jeffrey R. Krinsk**
(See above for address)


**Plaintiff**
**Donna Murray**

represented by **Jeffrey R. Krinsk**
(See above for address)


**Plaintiff**
**Stephen Anish**

represented by **Michael David Braun**
Braun Law Group
12400 Wilshire Boulevard
Suite 920
Los Angeles, CA 90025
(310) 442-7755
Fax: (310) 442-7756
Email: service@braunlawgroup.com
*TERMINATED: 12/04/2006*


**Patrice Lyn Bishop**
Stull Stull and Brody
10940 Wilshire Boulevard
Suite 2300
Los Angeles, CA 90024-3907
(310) 209-2468
Fax: (310) 209-2087
Email: service@ssbla.com


**Plaintiff**
**Robert Renzi**

represented by **James A. Caputo**
(See above for address)


**Plaintiff**
**Craig McCarthy**

represented by **James A. Caputo**
(See above for address)


**Steven J. Toll**
(See above for address)


SERVICE LIST
PAGE 5

DOCS/931581.1

**Plaintiff**
**Stoneridge Investment Partners LLC**

represented by **Jeffrey R. Krinsk**
(See above for address)
*TERMINATED: 01/06/2003*

**Laura M. Perrone**
Law Offices of Laura M Perrone
60 East 42nd Street
New York, NY 10165
(212) 949-5500
Fax: (212) 949-0049

**Plaintiff**
**Heywood Waga**

represented by **Jeffrey S. Abraham**
Abraham Fruchter and Twersky
One Penn Plaza
Suite 1910
New York, NY 10119
(212) 714-2444

**Lawrence D. Levit**
Abraham Fruchter and Twersky
One Penn Plaza
Suite 1910
New York, NY 10119
(212) 714-2444
Fax: (212) 279-3655
Email: Llevit@aftlaw.com

**Marc L. Godino**
Braun Law Group
12400 Wilshire Boulevard
Suite 920
Los Angeles, CA 90025
(310) 442-7755
Fax: (310) 442-7756
*TERMINATED: 07/06/2005*

**Patrice Lyn Bishop**
(See above for address)

**Plaintiff**
**Michael J. Farrell**

represented by **Lionel Z. Glancy**
(See above for address)

**Plaintiff**
**Mateo Camarillo**

represented by **Michael J. Aguirre**
Patricia A Meyer and Associates
550 West C Street
Suite 990
San Diego, CA 92101
(619) 235-8636
Fax: (619) 235-0510

**Plaintiff**
**Beverlee Jolly**

represented by **Michael J. Aguirre**
(See above for address)

**Plaintiff**
**Katy Cox Johnson**

represented by **James A. Caputo**
(See above for address)

**Plaintiff**
**Alan Hylton**

represented by **James A. Caputo**
(See above for address)

**Plaintiff**
**Janet Kusmierski**

represented by **James A. Caputo**
(See above for address)

**Plaintiff**
**Greg Singer**

represented by **James A. Caputo**
(See above for address)

**Plaintiff**
**Michele Voth**

represented by **Michael J. Aguirre**
(See above for address)

DOCS/931581.1

**Plaintiff**
**Victoria Jibaja Miller**

represented by **Michael J. Aguirre**
(See above for address)

**Plaintiff**
**Marijo A. Clemons**

represented by **Michael J. Aguirre**
(See above for address)

**Plaintiff**
**Pamela Molennor**

represented by **Michael J. Aguirre**
(See above for address)

**Plaintiff**
**Philip J. Turner**

represented by **Michael J. Aguirre**
(See above for address)

**Plaintiff**
**Jon Houg**

represented by **Michael J. Aguirre**
(See above for address)

**Plaintiff**
**Wendy Wallace**

represented by **Michael J. Aguirre**
(See above for address)

**Plaintiff**
**Theresa Marinelli**

represented by **Michael J. Aguirre**
(See above for address)

**Plaintiff**
**Freda Ramey**

represented by **Michael J. Aguirre**
(See above for address)

**Plaintiff**
**Celeste Damron**

represented by **Michael J. Aguirre**
(See above for address)

**Plaintiff**
**Patrick Pernett**

represented by **Michael J. Aguirre**
(See above for address)

| | |
|---|---|
| **Plaintiff**<br>**Danielle Legg** | represented by **Michael J. Aguirre**<br>(See above for address) |
| **Plaintiff**<br>**Kenneth Kacperski** | represented by **Michael J. Aguirre**<br>(See above for address) |
| **Plaintiff**<br>**Denise Haines** | represented by **Michael J. Aguirre**<br>(See above for address) |
| **Plaintiff**<br>**Susan Leahy** | represented by **Michael J. Aguirre**<br>(See above for address) |
| **Plaintiff**<br>**Blair Alexander** | represented by **Patrick Nathaniel Keegan**<br>(See above for address) |
| **Plaintiff**<br>**Congregation Bais Avrohom**<br>*on behalf on itself and on behalf of all*<br>*others similarly situated* | represented by **Michael M. Goldberg**<br>Glancy and Blinkow<br>1801 Avenue of The Stars<br>Suite 311<br>Los Angeles, CA 90067<br>(310) 201-9150<br>Fax: (310) 201-9160<br>Email: info@glancylaw.corn |
| **Plaintiff**<br>**Loran Group** | represented by **Solomon B. Cera**<br>Gold Bennett and Cera<br>595 Market Street<br>Suite 2300<br>San Francisco, CA 94105-2835<br>(415) 777-2230<br>Fax: (415) 777-5189<br>Email: scera@gbcslaw.com |

**SERVICE LIST**
**PAGE 9**

**Plaintiff**
**State Universities Retirement System**
**of Illinois**

represented by **Christopher T. Heffelfinger**
Berman DeValerio Pease Tabacco Burt and
Pucillo
425 California Street
Suite 2100
San Francisco, CA 94104
(415) 433-3200
Fax: (415) 433-6382
Email: cheffelfnger@bermanesq.com

**Michael J. Pucillo**
Berman DeValerio Pease Tabacco Burt and
Pucillo
222 Lakeview Avenue
Suite 900
West Palm Beach, FL 33401
(561) 835-9400
Fax: (561) 835-0322
Email: mpucillo@bermanesq.com

V.

**Defendant**
**Peregrine Systems, Inc.**

represented by **Charles G. La Bella**
LaBella and McNamara
401 West A Street
Suite 1150
San Diego, CA 92101
(619) 696-9200
Fax: (619) 696-9269
Email: clabella@labellamcnamara.com
*TERMINATED: 04/21/2003*

**Janet E. Moser**
Securities and Exchange Commission
5670 Wilshire Boulevard
Suite 1100
Los Angeles, CA 90036-3648
(323) 965-3998
Fax: (323) 965-3812

DOCS/931581.1

**Laura Brill**
Irell and Manella
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4276
(310) 277-1010
Fax: (310) 556-5222


**Maureen A. Sheehy**
Townsend and Townsend
2 Embarcadero Center
8th Floor
San Francisco, CA 94111
(415) 576-0200
Fax: (415) 576-0300
*TERMINATED: 06/17/2003*


**Defendant**
**John J. Moores**

represented by **David R. Woodcock, Jr.**
Vinson and Elkins
2801 Via Fortuna
Suite 100
Austin, TX 78746
(512) 542-8526
Fax: (512) 236-3206


**Harry Arthur Olivar, Jr.**
Quinn Emanuel Urquhart Oliver and Hedges
865 South Figueroa Street
Tenth Floor
Los Angeles, CA 90017-2543
(213) 443-3000
Fax: (213) 443-3100
Email: harryolivar@quinnemanuel.com

**Harry M. Reasoner**
Vinson and Elkins
1001 Fannin
Suite 2300
Houston, TX 77002-6760
(713) 758-3476
Fax: (713) 615-5173


**Janet E. Moser**
(See above for address)
*TERMINATED : 05/07/2003*


**Jeffrey S. Johnston**
Vinson and Elkins
1001 Fannin
Suite 2300
Houston, TX 77002-6760
(713) 758-3476
Fax: (713) 615-5920
Email: jjohnston@velaw.com


**John P. DeGeeter**
Vinson and Elkins
2801 Via Fortuna
Suite 100
Austin, TX 78746
(512) 542-8526
*TERMINATED: 09/23/2005*


**John B. Quinn**
Quinn Emanuel Urquhart Oliver and Hedges
865 South Figueroa Street
10th Floor
Los Angeles, CA 90017-2543
(213) 443-3000
Fax: (213) 624-0643


SERVICE LIST
PAGE 12

**Lauren J. Harrison**
Vinson and Elkins
1001 Fannin
Suite 2300
Houston, TX 77002-6760
(713) 758-3476


**N. Scott Fletcher**
Vinson and Elkins
2801 Via Fortuna
Suite 100
Austin, TX 78746
(512) 542-8526
Fax: (713) 615-5168


**Walter B. Stuart**
Vinson and Elkins
660 Fifth Avenue
Suite 2600
New York, NY 10103-0040
(212) 237-0007
Fax: (212) 237-0100


<u>Defendant</u>
**Steve Gardner**

represented by **Caroline McIntyre**
Bergeson Law Firm
303 Almaden Boulevard
Suite 500
San Jose, CA 95110-2712
(408) 291-6200
Fax: (408) 297-6000
Email: cmcintyre@be-law.com


<u>Defendant</u>
**Matt Glass**
*also known as*
Matt *Glass*

<u>Defendant</u>
**Christopher Cole**

represented by **Christopher T. Heffelfinger**
(See above for address)


SERVICE LIST
PAGE 13

**Janet E. Moser**
(See above for address)

**Leighton M. Anderson**
Bewley Lassleben and Miller
13215 East Penn Street
Suite 510
Whittier, CA 90602
(562)698-9771

**Robert S. Gerber**
Sheppard Mullin Richter and Hampton
12275 El Camino Road
Suite 200
San Diego, CA 92130-2006
(858)720-8900
Fax: (858)509-3691
Email: rgerber@smrh.com

**Defendant**
**Andersen LLP**                    represented by **Douglas M. Butz**
Butz Dunn Desantis and Bingham
101 West Broadway
Suite 1700
San Diego, CA 92101-8289
(619)233-4777
Fax: (619)231-0341
Email: dmbutz@butzdunn.com

**Timothy Scott Vick**
Bingham McCutchen LLP
1620 26th Street
Fourth Floor, North Tower
Santa Monica, CA 90404
(310)907-1000
Fax: (310)907-2000
Email: scott.vick@bingham.com

**Defendant**
**Richard A. Hosley, II**

represented by **Alison Priske Adema**
Hahn and Adema
501 West Broadway
Suite 1600
San Diego, CA 92101
(619)235-2100
Fax: (619)235-2101
Email: aadema@hahnadema.com


**Ayesha Najam**
Gibbs and Bruns
1100 Louisiana
Suite 5300
Houston, TX 77002
(713)650-8805


**Christine S. Chung**
Goodwin Procter
53 State Street
Boston, MA 02109
(617)570-1000


**Gerard G. Pecht**
Fulbright and Jaworski
1301 McKinney
Suite 5100
Houston, TX 77010-3095
(713)651-5243
Fax: (713)651-5246
*TERMINATED: 10/07/2003*


**Jean C. Frizzell**
Gibbs and Bruns
1100 Louisiana
Suite 5300
Houston, TX 77002
(713)650-8805

DOCS/931581.1

**Jeffry J. Cotner**
Gibbs and Bruns
1100 Louisiana
Suite 5300
Houston, TX 77002
(713)650-8805
Fax: (713)750-0903


**John Christopher Reynolds**
Gibbs and Bruns
1100 Louisiana
Suite 5300
Houston, TX 77002
(713)650-8805


**Laura M. Stock**
Goodwin Procter
53 State Street
Boston, MA 02109
(617)570-1000


**Michael A. Swartzendruber**
Fulbright and Jaworski
2200 Ross Avenue
Suite 2800
Dallas, TX 75201
(214)855-8067
*TERMINATED: 08/10/2005*


**Peter H. Mason**
Fulbright and Jaworsky
555 South Flower Street
Suite 4100
Los Angeles, CA 90071-2571
(213)892-9200
Fax: (213)892-9494
Email: pmason@fulbright.com
*TERMINATED: 08/10/2005*

Robin C. Gibbs
Gibbs and Bruns
1100 Louisiana
Suite 5300
Houston, TX 77002
(713)650-8805
Fax: (713)750-0903
Email: rgibbs@gibbs-bruns.com


Sydney G. Ballesteros
Gibbs and Bruns
1100 Louisiana
Suite 5300
Houston, TX 77002
(713)650-8805
Fax: (713)750-0903


**Defendant**                              represented by **Alison Priske Adema**
**Charles E. Noell, III**                                 (See above for address)


Ayesha Najam
(See above for address)


Brian E. Pastuszenski
Goodwin Procter
53 State Street
Boston, MA 02109
(617)570-1000


Christine S. Chung
(See above for address)

DOCS/931581.1

**Jane Hahn**
Hahn and Adema
501 West Broadway
Suite 1600
San Diego, CA 92101
(619)235-2100
Fax: (619)235-2101
*TERMINATED: 10/16/2006*


**Jean C. Frizzell**
(See above for address)


**Jeffry J. Cotner**
(See above for address)


**John Christopher Reynolds**
(See above for address)


**Laura M. Stock**
(See above for address)


**Robin C. Gibbs**
(See above for address)


**Sydney G. Ballesteros**
(See above for address)


**<u>Defendant</u>**                            represented by **Alison Priske Adema**
**Norris Van Den Berg**                          (See above for address)

**Ayesha Najam**
(See above for address)


**Brian E. Pastuszenski**
(See above for address)


**Jane Hahn**
(See above for address)
*TERMINATED: 10/16/2006*


**Jean C. Frizzell**
(See above for address)


**Jeffry J. Cotner**
(See above for address)


**John Christopher Reynolds**
(See above for address)


**Robin C. Gibbs**
(See above for address)


**Sydney G. Ballesteros**
(See above for address)

**Defendant**
**Thomas Watrous, Sr.**
*TERMINATED: 11/15/2006*

represented by **Meryl L. Young**
Gibson Dunn and Crutcher
4 Park Plaza
Suite 1400
Irvine, CA 92614-8557
(949)451-3800
Fax: (949)451-4220
Email: myoung@gibsondunn.com
*TERMINATED: 05/13/2003*

**Wayne T. Lamprey**
Goodin MacBride Squeri Ritchie and Day
505 Sansome Street
Suite 900
San Francisco, CA 90111
(415)392-7900
Fax: (415)398-4321
Email:
wlamprey@goodinmacbride.com

**Defendant**
**JMI Equity Fund LP**

represented by **Brian E. Pastuszenski**
(See above for address)

**Jane Hahn**
(See above for address)
*TERMINATED: 10/16/2006*

**Defendant**
**JMI Services Inc.**

represented by **Brian E. Pastuszenski**
(See above for address)

**Jane Hahn**
(See above for address)
*TERMINATED: 10/16/2006*

**Defendant**
**William D. Savoy**
*TERMINATED: 11/15/2006*

represented by **Cyrus R. Vance, Jr.**
Morvillo Abramowitz Grand Iason &
Silberberg
565 Fifth Avenue
New York, NY 10017
(212)856-9600
Fax: (212)856-9494

**Kathryn Diane Horning**
Allen Matkins Leek Gamble Mallory and
Natsis
501 West Broadway
Fifteenth Floor
San Diego, CA 92101-3541
(619)233-1155
Fax: (619)233-1158
Email: khorning@allenmatkins.com

**Meryl L. Young**
(See above for address)

**Robert D. Stewart**
McNaul Ebel Nawrot Helgren and Vance
600 University Street
Suite 2700
Seattle, WA 98101-3143
(206)467-1816
Fax: (206)467-0873

**Yvonne M. Dutton**
Allen Matkins Leek Gamble Mallory and
Natsis
501 West Broadway
Fifteenth Floor
San Diego, CA 92101-3541
(619)233-1155
Fax: (619)233-1158
*TERMINATED: 03/26/200 4*

**Defendant**
**William B. Richardson**
*TERMINATED: 04/22/2004*

**Defendant**
**Rod Dammeyer**

represented by **Michael J. Duckor**
Duckor Spradling Metzger and Wynne
401 West A Street
Suite 2400
San Diego, CA 92101-7915
(619)231-3666


**Phillip L. Stern**
Freeman Freeman and Salzman
401 North Michigan Avenue
Suite 3200
Chicago, IL 60611-4207
(312)222-5100
Fax: (312)822-0870


**Richard P. Campbell**
Freeman Freeman and Salzman
401 North Michigan Avenue
Suite 3200
Chicago, IL 60611-4207
(312)222-5100


**Robert Martin Shaughnessy**
Duckor Spradling Metzger and Wynne
401 West A Street
Suite 2400
San Diego, CA 92101-7915
(619)231-3666


**Defendant**
**David A. Farley**

**Defendant**
**Matthew C. Gless**

represented by **Thomas Lloyd Vance**
Vance and Blair
1201 Camino Del Mar
Suite 205
Del Mar, CA 92014
(858)793-0040
Fax: (858)793-1655


**Defendant**
**Ilse Cappel**

represented by **Barbara Howe Murray**
Coughlan Semmer and Lipman
501 West Broadway
Suite 400
San Diego, CA 92101-3544
(619)232-0800
Fax: (619)232-0107
Email: bmurray@csllaw.com


**Defendant**
**Douglas S. Powanda**
*TERMINATED: 11/15/2006*

represented by **Kimberly Wong**
Keesal Young and Logan
400 Oceangate
2nd Floor
Long Beach, CA 90802-1730
(562)436-2000


**Defendant**
**Steven S. Spitzer**

represented by **Dan Edward Marmalefsky**
Morrison and Foerster
555 West Fifth Street
Suite 3500
Los Angeles, CA 90013-1024
(213)892-5200
Fax: (213)892-5454
Email: dmarmalefsky@mofo.com

DOCS/931581.1

**Defendant**
**Richard T. Nelson**

represented by **Robert S. Brewer, Jr.**
McKenna Long and Aldridge
750 B Street
Suite 3300
San Diego, CA 92101-3540
(619)595-5400
Fax: (619)595-5450
Email: rbrewer@mckennalong.com

**Defendant**
**Frederick B. Luddy**

represented by **Christopher Harold McGrath**
Paul Hastings Janofsky and Walker
3579 Valley Centre Drive
San Diego, CA 92130
(858)720-2500
Fax: (858)720-2555
Email: chrismcgrath@paulhastings.com

**Defendant**
**Daniel Stulac**
*TERMINATED: 11/15/2006*

represented by **Michael A. Attanasio**
Cooley Godward Kronish
4401 Eastgate Mall
San Diego, CA 92121-9109
(858)550-6000
Fax: (858)550-6420
Email: mattanasio@cooley.com

**Defendant**
**AWSC Societe Cooperative, En**
**Liquidation**
*TERMINATED: 11/15/2006*

represented by **Luther Pilkinton**
Sheppard Mullin Richter and Hampton
1615 Corcoran St NW
Suite C
San Diego, CA 20009
(619)338-6500
Fax: (619)234-3815
*TERMINATED: 12/01/2006*

**Robert S. Gerber**
(See above for address)

**Defendant**
**KPMG LLP**
*TERMINATED: 01/20/2005*

represented by **Bradley Howard Ellis**
Sidley Austin
555 West Fifth Street
Suite 4000
Los Angeles, CA 90013-1010
(213)896-6000
Email: bellis@sidley.com
*TERMINATED: 01/20/2005*

**Defendant**
**Bearing Point, Inc.**
*TERMINATED: 01/20/2005*

represented by **Jennifer L. Spaziano**
Skadden Arps Slate Meagher and Flom
1440 New York Avenue NW
Washington, DC 20005
(202)371-7000
Fax: (202)661-8327
Email: jspazian@skadden,com
*TERMINATED: 01/20/2005*

**Defendant**
**Larry A. Rodda**
*TERMINATED: 01/20/2005*

represented by **Matthew W. Powell**
Wilke Fleury Hoffelt Gould & Birney
400 Capital Mall
Suite 2200
Sacramento, CA 95814
(916)441-2430
Fax: (916)442-6664
*TERMINATED: 01/20/2005*

**Trustee**
**Robert Charles Friese**

represented by **Marisa Janine-Page**
Patricia A. Meyer and Associates
550 West C Street
Suite 990
San Diego, CA 92101
(619)235-8636
Fax: (619)235-0515
Email: mjaninepage@aol.com

DOCS/931581.1

**Robert E. Schaberg**
Shartsis Friese
One Maritime Plaza
Suite 1800
San Francisco, CA 94111
(415)421-6500
Fax: (415)421-2922

**Plaintiff**
**Felix Lecocq**

represented by **Christopher Lovell**
Lovell and Stewart
500 Fifth Avenue
New York, NY 10110
(212)608-1900

**Plaintiff**
**William V. Alesi**

represented by **Lionel Z. Glancy**
(See above for address)

**District Court**

Clerk, Southern District of California
UNITED STATES DISTRICT COURT
880 Front Street
San Diego, California 92101-8900

Clerk, District of New Jersey
UNITED STATES DISTRICT COURT
50 Walnut Street
Newark, NJ 07101

DOCS/931581.1